THE MAYOR AND ALDERMEN OF JERSEY CITY v. THE NORTH JERSEY STREET RAILWAY COMPANY.

Argued February 24, 1905—Decided June 12, 1905.

1. Statutes are not to be so construed as to interfere with vested rights if their terms admit of any other reasonable construction.

2. The supplement of 1867 to the charter of the Jersey City and Bergen Railroad Company (*Pamph. L.*, *p.* 53), in enacting that it should not be lawful for the municipal authorities of any city or town to interfere with, hinder or obstruct the company in constructing or running its railroads, provided the same should be constructed and run according to the provisions of said act, had not the effect of discharging the company from its contractual obligations to Jersey City, previously undertaken by the company pursuant to legislative authority.

3. The supplement of 1867 to the charter of the Jersey City and Bergen Railroad Company (*Pamph. L.*, *p.* 53) has not the effect of modifying the express terms of contracts thereafter entered into between the company and Jersey City.

4. Where ordinances of a city gave to a street railway company permission to construct lines of railway in the streets and to operate cars thereon, upon terms of paying annual license fees for each car so operated, and the company accepted the ordinances upon these terms, constructed the lines of street railway and for many years operated cars thereon—*Held*, that the company and its successors who acquired its railway lines and assumed its obligations are estopped from setting up that the terms imposed by the ordinances were *ultra vires* the municipal corporation.

5. The averments of the pleas under review, with respect to the construction alleged to have been placed by Jersey City and by the Jersey City and Bergen Railroad Company upon the supplement of 1867 to the charter of that company (*Pamph. L.*, *p.* 53)—*Held*, not to modify the express agreements entered into by the company requiring it to pay to the city annual license fees for each car operated by the company.

On demurrers to pleas.

Before GUMMERE, CHIEF JUSTICE, and Justices FORT and PITNEY.

For the plaintiff, *Robert Carey*, *George L. Record* and *Gilbert Collins*.

For the defendant, *Sherrerd Depue* and *Frank Bergen*.

The opinion of the court was delivered by

PITNEY, J.   These demurrers challenge the legal sufficiency of four special pleas that have been interposed to the first count of the declaration herein. The declaration has already been sustained on demurrer. *Jersey City* v. *Consoli-*

*dated Traction Co.,* 41 *Vroom* 364 (note at close of opinion). See, also, *Jersey City* v. *Jersey City and Bergen Railroad Co., Id.* 360. The plaintiff counts upon the contractual obligation of the defendant to pay license fees accruing between May 25th, 1898, and the commencement of suit, for the operation of street railway cars by it during that period under several municipal licenses granted by the city to its predecessor, the Jersey City and Bergen Railroad Company, by ordinances adopted, respectively, in 1859, 1863, 1871 and 1874.

The declaration shows that by its charter (*Pamph. L.* 1859, *p.* 411), the Jersey City and Bergen Railroad Company was authorized to construct a railroad from some point on the Kill von Kull, at or near Bergen Point, to the Newark turnpike road leading from Jersey City to Newark, with one or more branches extending to the several ferries of the county of Hudson south of the city of Hoboken, provided that in constructing said railroad or branches through any of the streets of Jersey City the consent of the common council of the city should first be obtained; that by city ordinance approved December 20th, 1859, the company was authorized to lay a single track, with turnouts, in certain streets within the city limits, and to run cars thereon under certain restrictions and conditions, one of which was that it should pay annually to the city a license fee of $10 for each car; that this ordinance was accepted by the company and the tracks and turnouts thereby authorized were constructed; that by a supplement to the charter, approved March 17th, 1860 (*Pamph. L., p.* 393), it was enacted that the company, in laying, repairing and maintaining its rails and constructing its roads in the streets of Jersey City should be subject to such conditions as the common council, in the ordinance granting consent to lay such rails and construct said road, should have imposed or should impose upon the company; that the company having completed more than two miles of its railroad, and having constructed the tracks and turnouts authorized by the ordinance of 1859, commenced running horse cars thereon, and

paid the license fees prescribed by that ordinance; that by a supplemental ordinance, passed April 24th, 1863, the company was authorized to lay certain other tracks through the streets of the city, and to run horse cars thereon, under certain restrictions and conditions, one of which was that it should pay annually to the city a license fee of $10 for each car, and that this supplement was accepted and the tracks thereby authorized, or some of them, were constructed by the company. Averments follow, setting up further supplemental ordinances of August 10th, 1863; December 18th, 1899; September 8th, 1871, and November 13th, 1874, each of which authorized the company to make extensions of its tracks in the streets, and in each of these ordinances it was declared that the company should be subject, in laying, maintaining and using the tracks, to the same restrictions and conditions contained in the supplement of April 24th, 1863, and it is averred that each of these ordinances was accepted and the tracks thereby authorized were constructed by the company; that by an ordinance of September 26th, 1889, the city gave consent to the use by the company of electric motors as the propelling power of its cars instead of horses; that pursuant to the several ordinances and supplements above mentioned the Jersey City and Bergen Railroad Company continuously ran its cars upon the tracks and turnouts respectively authorized until September 25th, 1893, when it leased and transferred its property and franchises, subject to all burdens and liabilities, to the Consolidated Traction Company, which company thereupon assumed such burdens and liabilities; and that on May 25th, 1898, the same property and franchises, subject to all burdens and liabilities, were leased and transferred to the defendant company, which thereupon assumed said burdens and liabilities, and thenceforward until the commencement of this action continuously ran street cars upon the tracks and turnouts, or some of them, that were authorized by the several ordinances above mentioned, whereby the defendant became liable to pay to the plaintiff the license fees demanded.

Each of the four pleas under review sets forth a supple-

ment to the charter of the Jersey City and Bergen Railroad Company, passed by the legislature and approved by the governor February 13th, 1867 (*Pamph. L., p.* 53), whereby that company was authorized and empowered to construct a second track in certain streets in which it already had a single track, and to lay additional tracks in other streets of Jersey City, and by which certain duties were imposed upon the company concerning the character of its rails, the paving of streets through which they ran and the mode in which the tracks were to be laid and the cars to be operated. By section 4 it was enacted that it should not be lawful for the municipal authorities of any city or town through which the railroads of the company were or should be laid or operated to interfere with, hinder or obstruct the company in constructing or running their railroads, provided the same should be constructed and run according to the provisions of this act, and it was made the duty of the municipal authorities to afford all necessary and proper facilities to the company in constructing and operating their railroads so as best to accommodate the public travel. It is averred that after the passage and approval of this act, and pursuant to its terms, the Jersey City and Bergen Railroad Company constructed tracks in certain streets of Jersey City, and that the railroads of the company mentioned in the declaration, and in respect of which the license fees are demanded, were and have been constructed and operated by that company and its successors, lessees and assigns, including the defendant, according to the provisions of the act of 1867.

One of the pleas sets up that by virtue of this act any obligation of the Jersey City and Bergen Railroad Company, or its successors and assigns, including the defendant, to pay license fees pursuant to the terms of the several ordinances that antedated the passage of the act of 1867, was released, discharged, repealed and abrogated. Another plea attributes the like effect to the act with respect to the ordinances adopted after its passage. The remaining two pleas contain the additional averment that upon the passage and approval of the act of 1867 the Jersey City and Bergen Railroad Company, by

and with the consent of the plaintiff, ceased to pay license fees pursuant to the several ordinances in question; that from thence until the commencement of this suit, with the consent, acquiescence and approval of the plaintiff, neither the Jersey City and Bergen Railroad Company, nor any of its successors, lessees or assigns, including the defendant, ever paid any such license fees, and that the said act has been construed and acted upon from the time of its passage until the commencement of the suit by the plaintiff and by the several railroad companies, including the defendant, as releasing, discharging, repealing and abrogating any obligation by the companies to pay license fees pursuant to the several ordinances mentioned in the declaration. These two pleas differ in that one relates to the liability under ordinances that antedated the act of 1867 and the other to the ordinances subsequently adopted.

The present demurrers, therefore, raise three questions, viz.: *First,* whether the supplement of 1867 to the charter of the Jersey City and Bergen Railroad Company by force of its own terms discharged the obligation to pay license fees for cars run on tracks laid under city ordinances passed prior to the passage of the supplement; *second,* whether, in view of the terms of the supplement, there is any obligation to pay license fees for cars run on tracks laid under ordinances passed after the passage of the supplement, and *third,* whether the alleged contemporary and continuous construction placed upon the supplement of 1867, as manifested by the conduct of the municipal corporation on the one hand, and of the Jersey City and Bergen Railroad Company and its assigns, including the defendant, on the other hand, according to the averments of the pleas, has given such effect to the supplement of 1867 as to discharge the obligation to pay license fees.

We are unable to find in the act of 1867 any legislative intent that the company should be discharged from the obligations previously undertaken by it pursuant to legislative authority. As was pointed out by Mr. Justice Dixon, in *Jersey City* v. *Jersey City and Bergen Railroad Co.,* 41 *Vroom* 360, 362, the power of the municipality to impose, and of the railroad company to accept, the conditions prescribed by the

ordinances was reasonably clear from its charter (*Pamph. L.* 1859, *p.* 411, § 6), and was set at rest by the supplement enacted in the following year (*Pamph. L.* 1860, *p.* 393, § 2). Under this legislation, prior to the act of 1867, many lines of railroad had been constructed and were in operation by the company, all based upon consent of the municipality, conditioned upon the payment of annual license fees for each car. These ordinances had been severally accepted by the company, and the city was in receipt of or entitled to considerable annual revenues from this source.

It is the established rule that statutes are not to be so construed as to interfere with vested rights if their terms admit of any other reasonable construction. *End. Stat.,* § 273. This is but a branch of the rule that statutes are not ordinarily to be given a retrospective effect, and this rests at bottom upon the principle that it is the proper function of the legislature to prescribe a rule of conduct for the future, and not to subvert that which has been done in the past. Where vested rights are in question, the injustice of disturbing them furnishes an additional reason against giving a retroactive effect to a statute whose terms do not clearly require it. As was said by Justice Knapp, speaking for the Court of Errors and Appeals, in *Citizens' Gaslight Co.* v. *Alden,* 15 *Vroom* 648 (at *p.* 653) : "Laws, generally, are enacted for the regulation of future affairs and conduct, and to establish the basis on which rights may thereafter under them be rested, and are not usually designed to alter or affect the quality or legal relations of past acts and concluded transactions, much less to disturb rights which have arisen under laws running concurrently with their birth." See, also, *Town of Belvidere* v. *Warren Railroad Co.,* 5 *Vroom* 193, 196; *City of Elizabeth* v. *Hill,* 10 *Id.* 555, 558; *Roxbury Lodge* v. *Hocking,* 31 *Id.* 439, 443. In the general "act relative to statutes," approved March 27th, 1874 (*Gen. Stat.,* *p.* 3194), it is by the third section declared that the repeal of any statutory provision by this act, or by any other act thereafter passed, is not to affect or impair any act done or right vested or accrued before such repeal shall take effect. And in

*Williamson* v. *New Jersey Southern Railroad Co.,* 2 *Stew. Eq.* 311, 334, it was declared by the Court of Errors and Appeals that this statute is only declarative of the law as judicially pronounced in *Hunt* v. *Gulick,* 4 *Halst.* 205. Where private contracts have arisen under existing legislation the federal constitution (article 1, section 10) disables the state from passing any law to impair their obligation. And our own constitution, article 4, section 7, placitum 3, forbids the legislature to pass any law either impairing the obligation of contracts or depriving a party of any remedy for enforcing a contract which existed when the contract was made. Conceding, for the purposes of the present discussion, that, since a local municipality is but an arm of the state government, it is within the power of the general legislature to release parties from their obligations existing in favor of the municipalities, it is nevertheless clear, we think, on general principles, that such an intention should not be attributed to the legislature in the absence of plain terms requiring it. We find no evidence of such an intent in the act of 1867. It contains no reference to the contracts already entered into between the municipality and the railroad company; there is nothing in the act nor in the situation of the parties that discloses any consideration, moving to the public, for which the legislature would properly have relieved the railroad company from its obligation to pay license fees under agreements already made. It is insisted that section 4, declaring that it should not be lawful for the municipal authorities to interfere with, hinder or obstruct the company in constructing or running their railroads, has the effect of repealing that obligation. We are unable to so construe it. Reading that section in connection with the rest of the act, its scope may well be considered as confined to the new lines of railroad by the same act authorized. But treating the prohibition as having reference to all lines of railroad theretofore constructed, we are unable to see how it operates to discharge contractual obligations already undertaken by the company. Were the so-called license fees to be considered as taxes or impositions, an argument to the contrary might perhaps be made. But we are now dealing

with a voluntary engagement, deliberately and solemnly undertaken by the company itself, for a full and valuable consideration. It is, as we think, a fanciful construction that treats the enforcement of such a contract as a "hindrance" or "obstruction" within the meaning of the act of 1867.

Nor are we able to see that the act of 1867 has any effect in altering or modifying the terms of the ordinances of 1871 and 1874, adopted subsequently to its passage and accepted by the company. Certainly the statute, while it gave the consent of the general legislature to the construction of the tracks therein specified, was not intended to disable the company from constructing additional tracks pursuant to its chartered powers, provided it obtained the consent of Jersey City, as required by the charter. Nor is there anything in the act that disables the municipality from imposing reasonable terms as a condition of its consent, as impliedly authorized by the charter and expressly authorized by the supplement of 1860.

But were it otherwise, and although the company held no direct legislative grant of power to construct the lines authorized by the ordinances of 1871 and 1874, and although the city had no power either to give consent or to impose conditions upon assuming to give consent, we do not see how these considerations can avail the present defendant. By the averments of the declaration, admitted for the purposes of these demurrers, it appears that in fact municipal consent was given in the ordinances of 1871 and 1874; in fact conditions were imposed by those ordinances precisely as in the ordinance of April 24th, 1863, among which was the payment of annual license fees; in fact the ordinances were accepted by the company subject to those conditions, and the lines were constructed by it and have since been maintained and operated by it and its successors, including this defendant. It is now too late for the defendant to set up that the *de facto* contract thus entered into and acted upon, and from which benefits have thus accrued to the defendant and its predecessors, was *ultra vires* the municipal corporation. *Camden and Atlantic Railroad Co.* v. *May's Landing,* 19 *Vroom* 530.

And finally, we are unable to see that the express agree-

ments entered into between the company and the city, by the company's acceptance of the several ordinances in question, can be at all modified because of the construction alleged to have been placed upon the act of 1867 by the city authorities and by the railroad companies. It is only in a doubtful case that contemporaneous construction can be of value in throwing light upon the legislative intent. *State* v. *Wrightson*, 27 *Vroom* 126 (at *pp.* 206–210) ; *Suburban Electric Co.* v. *Elizabeth*, 30 *Id.* 134, 137. We find nothing doubtful in the act of 1867. Moreover, the only acts set up to manifest the contemporaneous construction are the failure of the party bound to make payments in accordance with the contract and the failure of the party entitled to enforce its rights. To the contrary stands the averment of the declaration, undenied by these pleas, that the ordinances of September 8th, 1871, and November 13th, 1874, accepted by the company, required license fees to be paid. The circumstance that these ordinances did not in terms mention license fees, and imported them merely by reference to the provisions of the ordinance of April 24th, 1863, in which they are expressly mentioned, is not significant. The method of manifesting the terms and conditions of the later ordinances by reference, rather than by repetition, was doubtless pursued for convenience merely. The same mode was adopted in the ordinances of August 10th, 1863, and December 18th, 1866, which antedated the act of 1867.

It is true, the pleas aver that the company ceased to pay license fees with the consent and approval of the plaintiff. But the plaintiff is a municipal corporation, a public body politic, acting for public purposes only, through agents of limited powers, chosen by the people for defined public purposes. Our attention is not called to anything in the charter of Jersey City, or in any other act of the legislature, that empowered the municipal authorities of that city either to bar the public rights by non-action or to participate in the functions of the general legislature of the state by assuming to place a construction upon its legislative acts.

The plaintiff is entitled to judgment upon the demurrers.