THE CITY OF EMPORIA, *Appellant*, v. THE EMPORIA TELEPHONE COMPANY, *Appellee*.

No. 17,859.

SYLLABUS BY THE COURT.

TELEPHONES—*City Ordinance—When it Takes Effect.* A city of the second class, by ordinance passed in the year 1900, granted to a telephone company the right for fifteen years to erect poles and string wires in and over its streets, with other incidental privileges, reserving to the city a percentage of receipts and the free use of a stated number of telephones for city business, and prescribing maximum rates to be charged. In the year 1905, the appellee succeeded to the rights and privileges so granted upon condition prescribed by the city that the rates should not be increased. On July 19, 1909, the city passed an ordinance granting to the appellee like privileges, in which it was provided that the company by accepting the privileges should agree to make certain specified material improvements in its plant and equipment and service, and should have the right to charge rates specified therein, higher than the rates under the old grant. It was also provided that before any of the privileges should be available the company

30—87 KAN.

should file a written acceptance of the terms of the ordinance and a surrender of its privileges under the former ordinance. It was also provided that the installation of the new system should be commenced within thirty days after such acceptance. The last section provided that the ordinance should take effect on publication of the ordinance, filing of the acceptance and waiver, and the adoption of a resolution by the city council that the company has complied with the provisions for reconstruction and improvements. The acceptance and waiver were duly filed, and the ordinance has been published, but the resolution has not been adopted. It is held,. (1) that the new ordinance has not taken effect; (2) that the provisions of the old ordinance remain in force, including the rates prescribed therein.

Appeal from Lyon district court. Opinion filed June 8, 1912. Reversed.

*Edwin S. Waterbury,* city attorney, for the appellant.

*W. L. Huggins, H. E. Ganse,* and *Humbert Riddle,* for the appellee.

## STATEMENT.

This action is to restrain the defendant company from increasing telephone rentals in the city of Emporia and for other relief. Judgment was rendered for the company on the pleadings.

The petition alleges the following facts: The city passed an ordinance which took effect September 10, 1900, granting for fifteen years permission to the appellee's predecessor to erect poles and string wires in and over streets and alleys for telephone purposes, prescribing conditions and regulations, reserving to the city the right to carry upon the poles and cross-arms, waterworks, fire or police alarm wires, and the free use of five telephones for city offices and departments. The ordinance provided that the city should be paid two per cent of the gross rentals received by the company for telephones, and have the free use of all the company toll lines for official business. The present company succeeded to the rights of its

predecessor under this ordinance, upon conditions prescribed by resolution of the city adopted August 21, 1905, and accepted. Under these grants the maximum rates for telephone service in the city was fixed at $2 per month for business purposes and $12 per year for residences. Among the new conditions prescribed when the new company succeeded to the franchise it was provided that no attempt should be made to change the rates. These conditions were accepted by the new company. The two per cent of gross receipts was paid as stipulated by that company (the appellee) until December, 1910, when it announced an increase in rates to $2.75 for business and $1.25 per month for residence telephones, and demanded payment of its patrons accordingly. At the same time it repudiated the terms of the original ordinance and the conditions by which it succeeded to the rights and franchise of the former company.

The answer contained a general denial, admitting, however, the passage of the ordinance of September, 1900; that the appellee is the successor of the former company; and that the resolution of August 21, 1905, authorizing the succession was adopted as alleged in the petition. The answer also pleaded as a second defense the adoption by the city of a new ordinance on July 19, 1909, granting to the appellee for fifteen years the right to construct and maintain in the streets of the city its wires, cables, conduits, and poles for the operation of a telephone exchange, upon conditions therein stated, and providing for the payment into the city treasury of three per cent of the gross receipts, with the privilege of charging for business telephones $2.75 per month and for single residence party phones $1.50 per month, these rates to continue until 2200 city-rate telephones are served, and after that to be increased to other rates named. The ordinance provides that rates may be changed by the city

on sixty days' notice and due investigation for violation of a provision requiring among other things that the company shall provide and maintain equipment and service at the highest practical efficiency, and extend its service as may reasonably be required by the council. Provisions are included regulating the setting of poles, management of the plant, and the kind and character of the equipment and the service to be rendered. It is also provided that before any of the rights and privileges so granted shall be available the company shall file its written acceptance of all the terms of the ordinance, with a written surrender of all rights and privileges granted by the former ordinance and the agreement of August 21, 1905, and a supplemental agreement of November 5, 1905, between the city and this company, and it is stated that "all the provisions of this ordinance, except that relating to the bond herein provided for, shall apply. from the date of its going into effect to all the business of said Emporia Telephone Company transacted within the present limits of the city of Emporia, or within the limits as they may be extended from time to time. The installation of the new system provided for by this ordinance shall be commenced within thirty days after the filing of such acceptance."

Sections 12 and 14 are as follow:

"SEC. 12. The Emporia Telephone Company, by its acceptance of this ordinance, agrees to install a modern, up-to-date multiple central energy switchboard, with metallic circuit of copper wire for all instruments furnished to its patrons and subscribers within the city of Emporia, said switchboard to be installed in a building controlled by said company, its successors and assigns, and to be constructed with special reference to telephone business and for the accommodation of such switchboard as herein specified.

"SEC. 14. This ordinance shall take effect and be in force from and after its passage and due publication in the official city paper, and filing of the acceptance and

waiver, as hereinbefore required, and the passage of a resolution by the city council declaring that the Emporia Telephone Company has fully and satisfactorily complied with the provisions of section 12 of this ordinance, and the Emporia Telephone Company shall have paid for the publication of this ordinance."

The company filed its acceptance and waiver on July 23, 1909, and alleged that it immediately began to build and has built a new telephone building under the terms of the ordinance, and has rebuilt and reconstructed its plant and apparatus and has expended $80,000 in such work—all in good faith and in reliance upon the ordinance, and avers that it is now entitled to its benefits and privileges, and that by virtue of the facts pleaded and the waiver and acceptance of the new ordinance the old ordinance is repealed. An estoppel is also pleaded by the acceptance and use by the city of free telephones and the free use of long-distance lines, which are required by the ordinance. The answer also pleads that the rates fixed by the old ordinance are inadequate, unreasonable, and confiscatory, and their enforcement would be inequitable and in violation of the federal constitution. It is also alleged that under the commission form of government, adopted by the city, it is restricted from reducing the rates to be charged by public utilities corporations to an amount which would yield less than eight per cent on its cash investments, exclusive of taxes, operating expenses and maintenance, and that the rates fixed by the new ordinance yield less than that.

In reply the city admits the passage of the new ordinance, and the filing of the acceptance, but denies that the ordinance is in force, or that it will be, until the passage of a resolution, as provided in section 14, which it alleges has not been done. It also denies that the ordinance has been acted upon, or that the relations between the parties under the old ordinance have been modified; denies that the company has complied with

the requirements of the new ordinance, and denies all the allegations of the answer except as admitted.

A motion for judgment on the pleadings was filed by the defendant and sustained. Judgment was thereupon rendered against the city for costs.

The opinion of the court was delivered by

BENSON, J.: Two principal questions are presented: (1) Is the new ordinance in effect; (2) Are the provisions of the old ordinance with reference to rates in force?

The allegations of construction, reconstruction, expenditure and improved service in compliance with provisions in the new ordinance can not be considered as true in deciding the motion for judgment for they are denied in the reply.

The language of section 14 is clear and unambiguous that the ordinance is to take effect from and after its passage, publication, filing of the acceptance by the company, and the passage of a resolution by the council declaring that the company has complied with the provisions of section 12. Each of these precedent conditions was deemed material by the city government, which, having the power to pass the ordinance, had the power to fix the time at which it should become effective. The company could accept or refuse such conditions, but having accepted without qualification is bound by the terms thus agreed to. The company contends that by exacting the acceptance and waiver of the privileges under the old ordinance the new ordinance took immediate effect. It is said that this result necessarily follows from the waiver in the present tense and the requirement that the waiver should be filed before the privileges granted should become available, which left an implication that they would become available at that time. It is further insisted that as the company was required to waive its rights under

the old ordinance it must have acquired at the same time the rights and privileges of the new one. The suggested results do not necessarily follow. The city had no reason, if it had the power, to prevent the improvements which it is alleged that the company has made. It must be presumed that if such improvements were in fact made (which is denied) they were made upon the belief that the governing body of the city would make the certificate at the proper time, and thereby the new ordinance would become effective. The company incurred no risk of being placed beyond the protection of either ordinance, for the first must be deemed in force until the second takes effect, whenever that event occurs. It is not alleged that the company has been embarrassed or interfered with in any improvements it desired to make, and it seems that it acted under the provisions of the old ordinance and maintained the rates provided therein long after the time when by its acceptance and waiver it now claims that it was repealed.

The precise contention of the company, as stated in its brief, is not only that the old ordinance was repealed by implication, but that the requirement by the city of the waiver and its filing by the company operated to cancel that ordinance as a contract; that it is not necessary to the defense that it should be held that the new ordinance is in force in all respects, but only that the old ordinance is not in force, either because of its repeal, or by express agreement by the acceptance and waiver required and given. It is also argued that a statute or an ordinance does not take effect by piecemeal, although when it does become effective as a whole, benefits to be derived under it may not accrue until a future date. Applying this last-named principle, it is claimed that the new ordinance went into effect when the waiver was filed, leaving the resolution as an incidental matter to be adopted afterward. One patent obstacle to this con-

struction is that it violates the express terms of the clause prescribing the event upon which the ordinance shall take effect. If, however, the view should be accepted that the old ordinance was repealed although the new one had not taken effect, the company would be left without the protection of any franchise, a situation probably neither contemplated nor desired.

It may be conceded, as argued, that ordinances may be repealed by necessary implication, and that the provisions of a new act fully covering the subject matter of a former one may be a substitute, and a repeal of a former act without express words of repeal. Still this principle does not meet the situation here presented for the new act can not become a substitute or work a repeal or accomplish any other legislative purpose until it takes effect. It is concluded that upon the facts as they must be held to be, on a motion for judgment on the pleadings, the new ordinance is not in effect and that the old one remains in force.

At the time the old ordinance was adopted the company had the right, theretofore directly granted by the state, to build its line in and over streets and highways, and the city could not prevent such use. (*Telephone Co. v. Concordia,* 81 Kan. 514, 106 Pac. 35.) Because it had this right the argument is made that the provisions of the first ordinance prescribing rates are void. It does not follow, however, that the city had no power over the company because it had no power to prohibit it from using its streets. In the case just cited it was said:

"The city may prescribe terms and conditions upon which the right granted by the state shall be exercised, but it has no power to annul the right granted by the higher authority." (p. 518.)

In *Wichita v. Telephone Co.,* 70 Kan. 441, 78 Pac. 886, it was also held that the state law gave the right to telephone companies to erect their lines in city streets, but that the general police powers of cities

might . nevertheless be exercised over such companies within the corporate limits. Acting under this police power and the power to prescribe terms and conditions, the city granted the privileges and the former company entered upon the undertakings and duties specified in the ordinance. Its terms, prescribed by the council and accepted by that company, were satisfactory to both. Later the appellee succeeded to the rights and became subject to the liabilities of its predecessor, and for a period of over ten years these terms were observed, the rates so fixed were maintained, and the obligations performed. It seems probable that the increase of rates was declared pursuant to the claim that the new ordinance had taken effect, rather than upon any supposed want of power in the city to fix rates in the first instance.

The acceptance of a franchise or privilege to use a city street is upon the implied condition that it shall be held subject to the reasonable exercise of the police powers of the state operating either through legislative or municipal action. (3 Dillon on Munic. Corp., 5th ed., § 1269.) It was accordingly held by this court that a franchise granted by a city of the second class for a street railway, prescribing, among other conditions, a schedule of fares, did not relieve the grantee from reasonable regulations and the burden of a license tax afterwards imposed. (*City of Wyandotte v. Corrigan,* 35 Kan. 21, 10 Pac. 99.) Much less would the holder of such privileges be exempt from a like condition contained in the franchise and accepted by the grantee. Hence it would at least seem true that provisions for the payment of two per cent of the gross receipts and to furnish free service for certain offices and departments are valid. Whether this is also true of a reasonable provision fixing rates or not, they should be upheld as against the grantee when assented to by acceptance of the ordinance imposing them—whereby they become a matter of contract, and the

grantee has long enjoyed the benefits and privileges of the same contract. It is true that it is alleged that the rates under the old ordinance are not now reasonable, but that is denied, and can not be taken as true on the motion for judgment on the pleadings. Besides, it is not alleged that the rates were unreasonable when established or when accepted by the company. Doubtless the increased rates prescribed by the new ordinance were fixed in view of the improved facilities and service provided for by its terms. These provisions do not indicate that the parties believed that the old rates were inadequate under the conditions existing when it was passed and that might continue until the improvements should be completed and the resolution adopted.

The contention that the provisions of the old ordinances relating to rates are invalid can not be upheld. The motion for judgment on the pleadings was erroneously sustained. The judgment is reversed, and the cause remanded with directions to overrule the motion and proceed in accordance with these views.

### SYLLABUS BY THE COURT.