THE CITY OF EMPORIA, *Appellant*, V. THE EMPORIA
TELEPHONE COMPANY, *Appellee*.

No. 17,859.

## OPINION ON REHEARING.

### SYLLABUS BY THE COURT.

1. FORMER DECISION—*Adhered to*. The conclusion stated in the syllabus in *City of Emporia v. Telephone Co.*, 87 Kan. 465, 124 Pac. 895, that the provisions of the old ordinance remain in force, including the rates prescribed therein, is upon rehearing adhered to.

2. MAYOR AND COUNCIL—*Authority to Contract—Telephone Services*. The mayor and council of cities of the second class have no authority to contract for rates for a term of years for telephone services to be furnished to the inhabitants of the city after the state by direct legislation or through a commission, or other lawfully delegated authority, has acted upon the subject.

3. ESTOPPEL — *Contract — Public Service Corporation — Cities*. The principle of estoppel applicable to a public service corporation claiming that its contract with a city was *ultra vires* the municipal corporation is considered and applied.

4. TELEPHONE CHARGES—*City Ordinance—Rates Binding*. The rates for telephone charges prescribed in an ordinance adopted and accepted in the year 1900, and agreed to by an assignee of the privileges granted by such ordinance in the year 1905 as a condition of the municipal consent to the transfer (such consent being necessary under the terms of the ordinance), will govern until action is taken by the state or by its authority.


Appeal from Lyon district court. Opinion on rehearing filed January 11, 1913. Reversal sustained. (For original opinion, see 87 Kan. 465, 124 Pac. 895.)

*Edwin S. Waterbury*, city attorney, for the appellant.

*W. L. Huggins, H. E. Ganse*, and *Humbert Riddle*, all of Emporia, for the appellee.

The opinion of the court was delivered by

BENSON, J.: It was held in the former opinion that the provisions of the old ordinance prescribing rates for telephone service accepted and long acquiesced in by the company should be upheld against the company which continued in the full enjoyment of the privileges granted by its terms. This conclusion was challenged in a petition for rehearing, which was allowed.

When the opinion was written it was believed that the appellee relied principally upon the claim that the new ordinance was in effect, and the proposition submitted for rehearing was treated only briefly. While still adhering to the conclusion referred to further reasons will now be stated.

The facts taken as true in deciding the motion for judgment on the pleadings appear in the statement and opinion included in the former report of this case. (*City of Emporia v. Telephone Co.*, 87 Kan. 465, 124 Pac. 895.) It is there stated that "Among the new conditions prescribed when the new company succeeded to the franchise it was provided that no attempt should be made to change the rates." (p. 467.) In this connection it is deemed proper to state now that the additional fact appears from the abstract that the resolution consenting to the transfer to the new company provided that in consideration of the payment of the arrearages of the two per cent of gross receipts due the city from the old company on September 1, 1904, and certain additional services, the city would receipt to Mr. Finney, the manager of the company, for the two per cent referred to "from year to year so long as he shall remain manager . . . and said company makes no attempt to change the present rates for service." These conditions were accepted by the new company—the appellee. The fact should also be stated that the old ordinance contained a provision "that before any transfer or assignment under the rights of

this franchise shall become binding on said city, a copy of such transfer or assignment shall be filed with the city clerk and said assignment consented to by the mayor and city council."

By chapter 121 of the Laws of 1905 (Gen. Stat. 1909, §§ 752, 753) cities of the second and third classes were given the control of streets and alleys, and it was provided that before any person or corporation should enter upon the streets or alleys for the construction of any railways, sewerage system or telephones the right to do so must be obtained by ordinance. Thus it appears that a right of way for the construction and operation of telephones in city streets after February 11, 1905, when that act became effective, must be obtained by municipal action. If the old company was unaffected by this change in legislation and it might have continued to the end of the fifteen years term without any grant of a right of way from the city, its successor had acquired no such right, and enjoys the use of the streets only through the consent of the city to the transfer, which was upon the condition, among others, that it should not change the rates prescribed for its predecessor. The city might have withheld its consent to the transfer and passed a new ordinance with this condition. The parties undertook to accomplish the same end by resolution, which for the purposes of this case may be given the same effect, the appellee having enjoyed the same privileges.

It is not necessary to define the precise powers of regulation vested in the city over telephone companies using city streets under the legislative grant of right of way previous to the act of 1905; nor is it necessary to delimit the additional powers given by that act. There was in the first place at least the power of regulation concerning the location of poles, height of wires, and to provide rules for safety and convenience in the use of streets, and after the act of 1905 there was the additional authority to grant the right of way

also, which implies a right to impose reasonable conditions upon which .it may be exercised. These privileges were deemed of consequence to the original company and to its successor, the appellee. Each company sought and obtained action by the mayor and council purporting to grant privileges upon conditions to which they assented. Contracts were accordingly made by an ordinance and resolution duly accepted; and the lines were operated for many years in accordance with the terms agreed to.

Presumably such action deterred other companies from occupying the field. The city has kept faith, and the appellee has been undisturbed in the use of the streets, the patronage of the public secured through such action, and the pursuit of business incident to such use. But it is said that because of a want of power to make a binding contract to fix rates the appellee is not bound by the agreement, and may summarily increase the rates subject only to correction in case they should be found unreasonable.

The power to prescribe rates to be charged by public service corporations for such service for a fixed period by contract, although referred to in the former opinion, was not decided. Since then the subject of municipal power in such matters has been considered in *The State, ex rel., v. Gas Co.,* ante, p. 165, 127 Pac. 639, where it was held that the power to contract for rates for furnishing water, light, heat or power to a city or its inhabitants is a governmental power which may be delegated to the mayor and council of a city, but must be specifically granted or be absolutely essential to the exercise of powers expressly conferred.

In that case it appeared that the state had legislated upon the subject by an act declaring that rates should not be greater than the charges fixed by the lowest schedule of rates on the first day of January, 1911, without the consent of the Public Utilities Commission (Laws 1911, ch. 238, § 30), and the attempt

to increase the rates above that standard had been made without the consent of the commission. Following that case it is held that the mayor and council of cities of the second class could have no authority to contract for rates for telephone service to be furnished to the inhabitants of the city for a fixed term of years, after the state by direct legislation or through a commission or other lawfully delegated authority had acted upon the subject.

. The contention of the appellee is that the contract for rates was absolutely void, and that acquiescence, however long continued, can not operate to prevent the proposed action to increase charges above the stipulated rates. It is said that the Wyandotte gas case necessarily leads to this conclusion. This claim will now be considered. There was nothing morally wrong or opposed to public policy in imposing the condition prescribing rates in the ordinance, or in the resolution consenting to the transfer. Such conditions were common in many like grants in many cities. Franchises, so-called, embracing schedules of rates for services in furnishing water, light and the like were sought and accepted and acted upon. The power attempted to be exercised was not prohibited by the act regulating cities of this class or by other statutes. It therefore remained vested in the legislature subject to delegation as might be deemed proper, but the legislature had not acted. In such a situation it has recently been held in another jurisdiction that a contract between a city and public service corporation will be in force between the contracting parties until the state exercises its paramount power to fix rates. A city in Wisconsin granted by ordinance the right to operate an interurban railroad upon certain streets. One of the conditions imposed was that the passenger fare between that city and another city should not exceed ten cents. The grantee accepted the conditions and constructed the road. The defendant traction company afterward succeeded to

his rights, and by another ordinance, passed at the instance of the traction company, it was granted the same rights that had been previously given to the first grantee and subject to the same conditions which were accepted.   The traction company continued the stipulated fares for a time and then gave notice of an increase to fifteen cents.   The action was brought to enjoin the proposed increase and to compel the traction company to abide by its contract.   The defense was that the city had no authority to exact the condition and that the part of the ordinance fixing fares was *ultra vires.*   In the course of the opinion it was said:

"That the traction company had the· right on its part to make a contract fixing the rate of charge for a given service, provided such contract violated no law and was not inimical to public policy, is clear enough.   By so doing it could not forestall the state and prevent it from ·exercising its governmental func-·· tion regulating rates.   But until the state sees fit to interpose, the carrier ordinarily· may exercise a free hand in fixing rates, subject to the qualification that they must not be unreasonably high and must not be unjustly discriminatory.   In order to have a binding contract there must be mutuality of obligation, and whatever doubt arises on the branch of the case we are considering arises in reference to the right of the city to make the particular contract before us." (*Manitowoc v. Manitowoc & Northern T. Co.*, 145 Wis. 13, 19,·129 N. W. 925.)

It was held that there was no law inhibiting the making of the contract fixing rates.   Neither was there any law authorizing it, and the court said:

"Statutes granting to cities the right to make long-time contracts binding on the public and fixing a rate to be charged by a public service corporation are not looked· upon with favor and will be strictly construed. It is only where the right is very clearly conferred that the state will be held to have relinquished its power to enact laws regulating tolls."   (p. 27.)

This is in entire accord with the Gas Company case, but the court proceeds to say:

"No specific authority having been conferred on the city to enter into the contract in question, the right of the state to interfere whenever the public weal demanded was not abrogated. The contract remained valid between the parties to it until such time as the state saw fit to exercise its paramount authority, and no longer. To this extent, and to this extent only, is the contract before us a valid subsisting obligation." (p. 28.)

The court, after examining the statutes, held that the state had not exercised the power to modify or abrogate the contract; that the railroad commission, although vested with such power, had made no determination, and that until such determination the contract remained in force.

In that case the company also contended that the fare stipulated in the ordinance was unreasonable, and the trial court found that it was unreasonably low. Concerning this feature of the case it was said:

"The court can not relieve the defendant from an improvident contract, but the contract is of such a character in the present instance that the legislative branch of the government may, in the interest of the public, abrogate it." (p. 30.)

The defense that the rates are unreasonable was also interposed in this case, but there was no finding, the judgment having been rendered upon the pleadings wherein the allegation of unreasonableness is denied.

It is true that the Wisconsin statutes, as appears from the opinion, gave the city control of the streets and the right of way over them. In this respect the situation is like that existing in this state since the passage of the act of 1905 vesting such control in the city, but unlike that existing when the old ordinance was adopted. However, as the appellee sought for and obtained the consent of the council to the transfer

29—88 KAN.

after the act of 1905 took effect, and accepted the conditions imposed at that time in giving such consent (a consent to such transfer being necessary under the terms of the ordinance), its rights should be considered with reference to the power of the city under that statute. The company received and still retains a right of way—certainly a substantial benefit even if there were no other—and should be held to the condition to which it agreed until the state acts in the matter or some right to relief is shown.

In harmony with the decision in the Manitowoc case, but proceeding upon a somewhat different course of reasoning, other courts have reached the same result by applying the principle of estoppel. In New Jersey, in an opinion by Judge Pitney, in a case relating to the validity of license fees imposed upon a street railway company by an ordinance accepted by the company, permitting the use of streets for its tracks, it was held that although the city had no power to impose the condition stipulated in the ordinance, the company having accepted the condition and constructed its line and operated its trains under the ordinance, the want of power in the city was unavailing. The court said:

"In fact the ordinances were accepted by the company subject to those conditions, and the lines were constructed by it and have since been maintained and operated by it and its successors, including this defendant. It is now too late for the defendant to set up that the *de facto* contract thus entered into and acted upon, and from which benefits have thus accrued to the defendant and its predecessors, was *ultra vires* the municipal corporation." (*Jersey City v. North Jersey St. Ry. Co.*, 72 N. J. Law, 383, 391, 61 Atl. 95.)

The same court in a case involving the same principle said:

"But in our view it is not open to the traction company to raise the question that the grant of its local privileges and franchises was *ultra vires* the municipal corporation, while at the same time the company retains

and uses and enjoys those privileges and franchises. The plea of *ultra vires* is not admitted in such circumstances except where it is practicable to restore the *status quo ante*, and we therefore think the present respondent is estopped from setting up that plea." (*Rutherford v. Hudson River Traction Co.*, 73 N. J. Law, 227, 235, 63 Atl. 84.)

In a similar situation the supreme court of Illinois declared:

"We are also of the opinion that even though it might be held that the condition upon which the permit or license was granted to the defendant railway company was *ultra vires*, the city not having the power to impose it, nevertheless, the ordinance having been accepted by the company with the condition attached, agreeing thereby to perform it, it became a valid contract between it and the city, the validity of which the defendant is now estopped to deny. The act of the city in imposing the condition can not be treated as against public policy or prohibited by statute, and void, and therefore, having accepted the contract in its entirety and enjoyed the benefits for which it agreed to pay the amount prescribed, it can not now repudiate that contract." (*Chicago Gen. Ry. Co. v. City of Chicago*, 176 Ill. 253, 259, 52 N. E. 880, 68 Am. St. Rep. 188.)

In another case, also relating to the franchises of a street railway company, the Illinois court said:

"In the absence of the ordinance the respondent company had no power or right to enter upon the streets of the village and erect poles, string wires thereon and construct and operate its road by electricity upon and along such streets. These privileges constitute ample consideration, if any could be deemed necessary. The privileges granted the respondent company by the terms of the ordinance have been and are being fully enjoyed by it. It can not be permitted to take and retain all advantages and benefits of the ordinance, and escape performance of duties to the public upon which its rights to such advantages and benefits are predicated upon the ground the ordinance and the duties imposed by it are *ultra vires* both the village and the respondent company. The plea of *ultra vires* will not, as a general rule, prevail when it will not advance

justice, but will, on the contrary, accomplish a legal wrong; and it is a general rule that undertakings, though they be *ultra vires*, will be enforced against quasi public corporations if said corporations retain and enjoy the benefits of concessions granted on condition such undertakings should be performed." (*The People v. Suburban R. R. Co.*, 178 Ill. 594, 607, 53 N. E. 349, 49 L. R. A. 650.)

In *The City of St. Louis v. Davidson*, 102 Mo. 149, 14 S. W. 825, 22 Am. St. Rep. 764, it was held that a contract made by a city although *ultra vires* is not illegal if not prohibited by its charter, and that one who had received benefits under a contract with the city was estopped from setting up the plea of *ultra vires* to escape liability upon the contract while retaining its benefits.

The general principle of estoppel applied to a business corporation acting *ultra vires* where the contract has been executed was stated in *Town Co. v. Morris*, 43 Kan. 282, 23 Pac. 569, thus:

"A corporation which has enjoyed the benefits of a contract can not plead that it was *ultra vires*, where no fraud is intended or has been committed." (Syl. ¶ 1.)

The application of the principle of estoppel to a public service corporation, acting without legislative authority, where the condition was agreed to by the company is denied in *Farmer v. Telephone Co.*, 72 Ohio St. 526, 74 N. E. 1078, and also in *Wright v. Glen Telephone Co.*, 112 N. Y. Supr. Ct., App. Div., 745. The latter case was an action by an individual claiming the benefit of a rate fixed by an agreement contained in an ordinance. The court cited the Farmer case in Ohio and other decisions, and said:

"If this be sound law the franchise can in no way be a contract binding upon the defendant as to compensation for service for lack of consideration. The defendant can not be estopped because it has complied so far with terms with which it was not required legally

to comply. No harm has been done this plaintiff or the municipality and I can see no element of estoppel in any act done by the defendant under the terms of the so-called franchise." (p. 747.)

Referring to conflicting decisions on this subject it is stated in section 218 of volume 1 of Beach on Public Corporations that the great weight of authority supports the proposition that when the contract is wholly beyond the express or implied powers of the corporation it is absolutely' void and can not be ratified by performance or acceptance of benefits.

At section 1229 of volume 3 of the fifth edition of Dillon on Municipal Corporations this subject is discussed, and reference is made to the fact that in some jurisdictions such a condition not authorized by law is regarded as a mere nullity, not however impairing the validity of the grant or franchise, but the author also says:

"But in other jurisdictions the principle of *estoppel* appears to be applied, and it is held that a railroad company or other public service corporation, which has accepted the benefit of a grant or consent with a condition attached thereto, is estopped to contest the validity of the condition either as *ultra vires* the municipality, or as beyond its own powers, and is bound thereby." (§ 1229.)

The learned author does not appear to give his own views upon this particular subject.

Decisions of this court are cited to uphold the contention that municipal action which is *ultra vires* in the strict sense of that term can not be made valid by ratification, but the precise question now under consideration has not been determined here. It was held in *The City of Leavenworth v. Rankin*, 2 Kan. 357, that a municipal corporation can exercise only powers conferred by law. In making contracts they must act within the limits of such powers and no subsequent act of the corporation can cure the defect. These are

statements of general principles frequently cited and followed.

In *In re Pryor, Petitioner,* 55 Kan. 724, 41 Pac. 958, it was held that an ordinance passed after the grant of a right to lay and maintain gas pipes in a city of the second class fixing maximum rates is inoperative as to the assignees of the right theretofore granted by an ordinance in which rates were not fixed. It will be seen that there was no contract or consent to the rates involved in that case, but only a question of power to fix maximum rates. The court said in the opinion:

"Whether they might, as a condition of their consent, provide that gas or water should be furnished to the city or to its inhabitants at not exceeding certain prescribed rates, we need not now inquire." (p. 728.)

Passing by the absence of any consent of the company in that case, it will be seen that an estoppel could not possibly be involved.

In the course of the opinion in *O'Leary v. Street Railway Co.,* 87 Kan. 22, 123 Pac. 746, it was said:

"Inaction, acquiescence, tacit consent, and the like, on the part of city officials can not be invoked to justify private invasions of public property or rights, and lapse of time can not bar remedies appropriate for the protection of public interests. Nor can estoppel be invoked in cases where the city was powerless, under the law, to do the disputed thing in the first instance. But no such questions are presented here." (p. 31.)

That case is cited as opposed to the application of estoppel here, but it does not sustain the contention. It was only held that the city was not estopped by failing to act or by giving consent when it had no authority to do either.

It is not necessary to decide that the principle of estoppel applies here as fully as it was held to apply in some of the authorities cited. It is sufficient to say that the rates prescribed in the ordinance should govern until some action is taken by the state or by its

Fowler v. Surety Co.   ·

authority.   Nothing said in the opinion in the Wyandotte Gas Company case is at 'variance with this conclusion, which is reached by a consideration of matters not involved in that case.

The appellee suggests 'that the appellant now claims that the former opinion precludes the appellee from "presenting its evidence in support of the · defenses raised by it in its answer," and asks for further directions.   The directions given seem reasonably plain, and no difficulty in construing the opinion is anticipated. The question presented in this court was whether the district court erred in giving judgment for the defendant upon the pleadings.   We held that it did so err, reversed the judgment so rendered and directed the district court to overrule the motion of the defendant, and this is still the conclusion of the court.   Further proceedings should be in accordance with the views expressed in this and the former opinion.