THE CITY OF EMPORIA, *Appellee*, v. THE EMPORIA TELEPHONE COMPANY, *Appellant*.

No. 18,604.

SYLLABUS BY THE COURT.

1. "RESTRAINING ORDER" — "TEMPORARY INJUNCTION" — *Distinguished.* The difference between a restraining order and a temporary injunction is mainly in the effect produced. An order which in effect ties the hands of a going concern operating a public utility, until final hearing, should be deemed a temporary injunction from which an appeal will lie.

2. TELEPHONE COMPANY—*When Subject to Control of Utilities Commission.* A telephone company located in a city of the second class, operating exchanges and toll lines in the county and in four adjacent counties and in six other towns, using 123 miles of line and 91 miles of toll line, with 2400 stations in such city and 600 elsewhere, nearly one-fifth in value of its property for taxation being outside of such city, is within the provisions of section 3 of chapter 238 of the Laws of 1911 and subject to the control of the public utilities commission.

3. RATES—*Allowed by Utilities Commission—Can Not be En-joined by District Judge.* Pending a continued litigation be-tween such city and telephone company to prevent the latter from increasing its rates under an ordinance passed but not yet in force, application was made to the public utilities com-mission, and an order was made by that body permitting an increase. The trial judge thereafter temporarily enjoined the company from charging such increased rates. *Held*, error.

Appeal from Lyon district court. Opinion filed June 7, 1913. Reversed.

*H. F. Ganse, R. M. Hamer,* both of Emporia, *J. W. Gleed,* and *J. L. Hunt,* both of Topeka, for the appellant.

*Edwin S. Waterbury,* city attorney, for the appellee.

The opinion of the court was delivered by

WEST, J.: This case comes up on an attempted ap-peal from an alleged temporary injunction and on mo-tion to dismiss such appeal. To reach understandingly the present condition of the litigation a brief *resume* is necessary. In January, 1911, the city sued the tele-phone company to enjoin it from putting into effect rates higher than those specified in an ordinance of June 19, 1900. The telephone company pleaded an ordinance of July 19, 1910, permitting higher charges on compliance with certain conditions and alleging such compliance. The city replied, denying that the new or-dinance had gone into effect, even according to its own terms, and alleging noncompliance. A restraining or-der was granted but afterwards dissolved. June 20, 1911, judgment was given the telephone company on the pleadings; the city appealed and the judgment was reversed, and upon a rehearing the former opinion was adhered to January 11, 1913. (*City of Emporia v. Tele-phone Co.,* 88 Kan. 443, 129 Pac. 187.) It was held in the original opinion (*City of Emporia v. Telephone Co.,* 87 Kan. 465, 124 Pac. 895), that as the new ordinance

contained a provision that it should not take effect until the passage of a resolution declaring that the telephone company had fully and satisfactorily complied with its provisions and such resolution had not been adopted, it could not be determined from the pleadings that the defendant was entitled to judgment. It was ruled that the original ordinance fixing rates, under which operations had been carried on for a term of years, was by reason of acceptance and long acquiescence binding upon the company and should be upheld as against it until other rates should properly be put into effect. The technical point decided, however, was that as the pleadings contained a denial that the ordinance was in force, the company was not entitled to a judgment thereon. On the rehearing (88 Kan. 443, 129 Pac. 187) it was said that the city had no authority to contract for rates for a term of years after the state, by direct legislation or through a commission or other lawfully delegated authority, had acted upon the subject. It was pointed out that chapter 121 of the Laws of 1905 empowered cities of the second class to grant by ordinance the right to enter upon the streets and alleys for the construction of telephones, and the incidental rights of cities enacting such ordinance were touched upon. The decision in *The State, ex rel., v. Gas Co.*, 88 Kan. 165, 127 Pac. 639, was referred to in discussing the power of cities to fix rates, and it was said:

"It is sufficient to say that the rates prescribed in the ordinance should govern until some action is taken by the state or by its authority." (88 Kan. 454.)

The gas company case determined that the public utilities commission had full power, under chapter 238 of the Laws of 1911, to control the rates which the gas company should charge Kansas City, but as to Rosedale, a city of the second class, it was held that under chapter 136 of the Laws of 1903 power existed to contract

for and fix rates, but that in exercising this power it had contracted that the rates should not exceed those charged in Kansas City, and therefore, as a matter of contract, Rosedale was bound by the legal charge in the latter city. It will be observed that the act of 1903 referred to does not include telephone companies, and therefore is applicable only by way of analogy touching municipal power to prescribe rates for a fixed term, the old ordinance having been passed prior to the act of 1903. The effect of the reversal was to remand the cause for trial, so that whatever judgment might be rendered should be upon evidence and not upon the pleadings, which presented an issue to be determined. January 15, 1913, the company applied to the public utilities commission for permission to put in force rates according to a schedule filed November 10, 1911, substantially the same as the rates named in the new ordinance, and it was ordered that such rates were proper and should be charged until the further order of the commission authorizing a change. Later in the same day the city served notice that it would apply on the 16th for a restraining order and temporary injunction. A hearing on this application was begun January 16, continued to the 24th and then to the 29th, when the judge announced that he would grant the order. At this time the company had closed its evidence in chief and the city had put on one witness and rested, reserving its evidence, as counsel states in his brief, for the hearing seven days later. Upon this announcement by the judge the company moved for a stay and that a supersedeas bond be fixed, which motions were refused and an entry was made upon the journal reciting that it was by the court ordered, adjudged and decreed that the application be allowed and that the defendant be restrained and enjoined until further order of the court from charging higher rates than those provided by the old ordinance and from refusing service

and disconnecting telephones from patrons who refused to pay higher rates, and that the application for temporary injunction be set down for hearing February 7. Afterwards, without notice to the defendant, another entry was made, reciting that it was ordered by the judge that the defendants be restrained and enjoined until further order and that the application for temporary injunction be set down for hearing February 7. It appears that on January 15 the company also applied for permission to increase the rates approved on that day by the commission, which application was set for January 18 and is still undisposed of, and that on January 28 the commission issued an order to show cause why the order of January 15 should not be set aside. The judge issued a temporary restraining order to the utilities commission against the enforcement of its order of January 15, but this was dismissed. On January 29 the city filed a verified supplemental petition setting up the proceedings before the public utilities commission, alleging that the order was secured by fraud, and that the company was not within the jurisdiction of the commission. An amendment to the answer was filed, also a supplemental answer setting up the order made by the commission.

The first question presented is whether the order actually made below was a temporary injunction or a mere restraining order, an appeal lying from the former but not from the latter. In *The State v. Johnston,* 78 Kan. 615, 97 Pac. 790, it was held that a restraining order is effective only until an application for an injunction shall be heard; that a temporary injunction is a restraining order effective until the trial of the action in which it is issued; that the effect and not the name determines the class to which it belongs. In *The State v. Werner,* 80 Kan. 222, 101 Pac. 1004, it was said (p. 225) that there is little, if any, difference

between the two except as to duration.   In the case of
*In re Sharp,* 87 Kan. 504, 124 Pac. 532, it was said:

"It will be observed that here the order was made by
the district judge, restraining and enjoining the de-
fendant 'until the final determination of this action,'
and we think upon principle as well as upon the au-
thority last cited it should be deemed a temporary in-
junction rather than a mere restraining order."
(p. 508.)

. (See, also, Civ. Code, §§ 250-253.)

Without attempting to differentiate to the last de-
gree, it is sufficient to say that as the controversy in-
volved the rates which the telephone company—a going
concern—might charge, and as it had put in its evi-
dence and rested, and the city apparently had scarcely
begun the introduction of its testimony, considering
the announcement by the judge that the application
(which was for a temporary injunction) would be
granted and that a hearing for a temporary injunction
would be set for the 7th of the succeeding month, the
effect of the order, in view of the two journal entries,
was to tie up the telephone company until the final de-
termination of the case, and therefore was an order
from which an appeal may be had.

It is contended that the utilities commission has been
clothed with the power to determine the rates which
the company may charge and has made such determina-
tion.   True, it is stoutly asserted that the testimony
already in shows conclusively that the conditions of the
new ordinance have been complied with and that the
city is wrongfully refusing the resolution of acceptance,
and therefore coming into a court of equity with un-
clean hands, and should be denied equitable relief for
that reason.   On the other hand, the city complains bit-
terly that the company is charging the rates prescribed
by the new ordinance without paying the required per
cent of its gross receipts, having been in default for

over two years. It is argued that the public utilities act is merely cumulative and does not disturb the preexisting power of cities to contract for rates, and that the validity of the rates fixed and contracted for by the ordinance of 1900 and its acceptance remains the law of the case.

If the rates ordered by the commission are to be upheld the new ordinance is out of the case so far as the charges for service are concerned, and, as already twice decided, the old ordinance was binding on the company until in some proper way superseded. Hence it is vital to ascertain the effect of the order made by the utilities commission. While it was alleged in the supplemental petition that the defendant's telephone utility is situated and operated principally and wholly for the city of Emporia and its people, and is under the exclusive authority of its own commission to control and regulate, the evidence on the hearing was to the effect that on January 1, 1911, the company was operating exchanges and toll lines in Lyon and four adjacent counties, including exchanges in the towns of Emporia, Reading, Neosho Rapids and Plymouth, and that on and since that time it operated small exchanges at Miller and at Rosean; that on and since January, 1911, it has operated ninety-one miles of toll lines and is now operating one hundred and twenty-three miles, covering Lyon and extending into four adjacent counties; that it has 2400 stations in Emporia and six hundred outside of the city. The report to the tax commission offered in evidence on cross-examination showed a total valuation of $194,424, $155,049 of which is in Emporia. We think this testimony sufficient to overcome the effect of the verification of the supplemental petition and to show that the company, according to the provisions of section 3 of the utilities act (Laws 1911, ch. 238), is subject to the jurisdiction of the public utilities com-

mission (*The State, ex rel., v. Gas Co.,* 88 Kan. 165, 127 Pac. 639).

It not only appears by the pleadings that the city was at the beginning of this suit under the commission form of government, pursuant to chapter 82 of the Laws of 1909 (Gen. Stat. 1909, §§ 1473-1509), but it was pleaded in the supplemental petition that the utility is under the exclusive power of the city commission, although strangely enough no mention in the briefs is made concerning the right of this body to act under the statute referred to. It is necessary, however, to examine some of the provisions of this statute. Section 30 authorizes the commissioners to permit the construction and operation of telephone lines, all contracts granting such original franchise to be by ordinance and not otherwise, no contract or privilege "now existing or which may hereafter be granted" to extend longer than twenty years from the date of such grant or extension. The fifth subdivision expressly empowers the commissioners:

"At all times during the existence of such contract, grant, privilege or franchise . . . by ordinance to fix a reasonable schedule of maximum rates, and to make reasonable changes therein from time to time, to be charged such city and the inhabitants thereof for gas, light and heat, electric light, power or heat, or steam heat, and the rates of fare on any street railway, and the rates of any telephone company, or the rates charged any such city or the inhabitants thereof by any person, firm or corporation operating under any other franchise under this act; and the board of commissioners, under the provisions of this act, shall have the right to change or modify any such schedule of rates, after giving due notice and granting a hearing to the interested parties of their intention so to do."

The section further provides that no rates shall at any time be fixed which shall prohibit earning at least eight per cent of the actual cash investment above reasonable operating expenses, maintenance and taxes.

Further, that no such franchise shall be granted until approved by a majority of the electors of the city. The eighth subdivision provides that:

"All contracts, grants, rights, privileges or franchises for the use of the streets and alleys of such city, not herein mentioned, shall be governed by all the provisions of this act, and all amendments, extensions and enlargements of any contract, right, privilege or franchise previously granted to any person, firm or corporation for the use of the streets and alleys of such city shall be subject to all the conditions herein provided for in this act for the making of original grants and franchises."

Were it to be held, therefore, that the state could act through the city commission in changing the rates fixed by the old ordinance, it is plain that many restrictions would attach to such action. But, as already indicated, it is manifest that the telephone company is clearly within the provision of the public utilities commission act (Laws 1911, ch. 238), so that the power to fix rates rests with that commission rather than with the city commissioners. Secion 10 of this act requires each public utility governed thereby to establish just and reasonable rates. Section 11 requires schedules to be filed with the commission. Section 12 prohibits charging rates higher than those shown by such schedules, and section 13 empowers the commission, either upon complaint or upon its own initiative, to investigate, and after full hearing to fix and order just and reasonable rates. Other sections provide for hearing the complainant or complainants in any case and for the enforced attendance of witnesses and production of evidence on their behalf. Sections 16 and 18 provide that any order or decision made by the commission may be reviewed and corrected by a proceeding in court, and section 21 that such proceeding may be begun by any party in interest, and that appeals from any decision of the district court may be taken to this court, and

that during the pendency of such proceeding the orders of the commission prescribing rates shall remain in force unless temporarily stayed or enjoined. Section 30 provides that unless the commission shall otherwise order it shall be unlawful to charge higher rates than those fixed on the lowest schedule of rates for the same service on January 1, 1911. Section 33 authorizes the municipal commission to contract with any public utility situated and operated wholly or principally within the city subject to any law in force at the time as to the quality or service and the maximum rates and charges therefor, and as to the making of extensions and additions to its plant, and provides that upon complaint by ten or more taxpayers to the public utilities commission, on giving bond to pay the costs, the reasonableness of any right, privilege or franchise granted or any order or resolution or part thereof adopted by the municipal commission may be inquired into, and if the public utilities commission, after full hearing, should recommend changes and the municipal commission does not within twenty days thereafter conform to such recommendations, the public utilities commission may proceed against it in any court of competent jurisdiction to set aside any ordinance or resolution, or part thereof, because of its unreasonableness or illegality or because the same is not for the best interests of the municipality. Section 39 empowers the utilities commission to compel compliance with its orders by proceedings in mandamus, injunction or other appropriate civil or criminal remedies. Section 40 provides that the rights and remedies given by the act shall be construed as cumulative of all other remedies in force relating to common carriers and public utilities, and shall not repeal any other remedies or rights now existing for the enforcement of their duties and obligations, and section 41 provides that all grants of power, authority and jurisdiction contained in the act shall be liberally construed.

The fixing of rates is always a legislative and never a judicial question. Reasonableness of rates is a judicial question. This case has never involved the power nor has either of the parties sought the assistance of the court to fix rates. The legislature has in the way indicated delegated to the public utilities commission the power to prescribe the rates which the defendant may charge. Application having been made to this body, regular in form, and an order regularly made thereon, it can not be said that this has the effect of ousting the court of jurisdiction, because jurisdiction for this purpose the court did not have.

It can not be successfully maintained that the rates prescribed by the old ordinance became, by force of acceptance and acquiescence and by virtue of the decisions already made in this case, rates determined upon by action taken by the state or by its authority, but, on the contrary, they became, as already decided, binding upon the company until such action should be taken. It is needless to consider whether the rates prescribed by the new ordinance could be deemed rates determined upon by action of the state or its lawfully constituted authority, for the all-sufficient reason that, as already twice decided, such ordinance has never gone into effect. Never having become a municipal regulation, it could not by any possibility preclude the public utilities commission from exercising the authority expressly conferred upon it by the legislature.

The company complains that the city has not passed the resolution of acceptance and put the ordinance in force, but having by order of the public utilities commission been authorized to charge, as counsel for the city says in his brief, the same rates prescribed by the new ordinance, it is difficult to see how the company could be benefited by putting it into effect.

The city complains that the rates prescribed by the old ordinance should still be deemed binding upon the

company, for the reason that the public utilities commission was without jurisdiction, and for the further reason that the order was obtained by fraud. The first of these reasons is already disposed of, and the second can not be determined in this collateral manner. It is presumed that the commission, when acting upon its rule to show cause and upon the application for further increase of rates, will put itself in possession of all the facts and decide the matter in accordance with the essential rights of all parties concerned.

In view of the foregoing considerations and for the reasons indicated, we hold that the trial judge erred in making the order complained of, and such ruling is reversed and the cause remanded for further proceedings in accordance herewith.