THE STATE OF KANSAS, ex rel. John Marshall, as Attorney for the Public Utilities Commission of the State of Kansas, *Appellee*, v. THE WYANDOTTE COUNTY GAS COMPANY, *Appellant*.

No. 18,221.

SYLLABUS BY THE COURT.

1. "PUBLIC UTILITY"—*Definition.* The term "public utility," wherever used in the public utilities act (Laws 1911, ch. 238), means "every corporation, company, individual, association of persons, their trustees, lessees or receivers" that may own, control or manage, except for private use, any equipment, plant, generating machinery or any part thereof in operation of the business enterprises specified in section 3 of that act; and the term, as used in the act, nowhere means the physical equipment, plant or machinery used in conducting any such business.

2. PUBLIC UTILITIES COMMISSION—*Scope of Jurisdiction.* The Public Utilities Commission for the state of Kansas has full power, authority and jurisdiction to supervise and control all public utilities described in section 3 of the act, with the exceptions therein specified, and a public utility which owns or operates a separate equipment, plant or machinery for any of the specified purposes in two or more cities is not within such exceptions.

3. CITIES—*Power to Contract for Rates for Gas.* The power to contract for rates for the furnishing of water, light, heat or power to a city or its inhabitants is a sovereign, governmental power which is vested in the lawmaking power of the state. The power may be delegated to the mayor and council of a city but is not to be inferred from mere convenience, but must be specifically granted or be absolutely essential to the exercise of other powers expressly conferred upon such mayor and council.

Appeal from Wyandotte district court, division No. 1. Opinion filed November 9, 1912. Modified.

*J. W. Dana,* of Kansas City, for the appellant.

*John Marshall,* attorney for the Public Utilities Commission, for the appellee; *R. J. Higgins,* of Kansas City, of counsel.

The opinion of the court was delivered by

SMITH, J.: This action was brought January 4, 1912, in the name of the state of Kansas on the relation of the attorney for the Public Utilities Commission for the state of Kansas to enjoin the appellant gas company from increasing the rate charged for gas in Kansas City and Rosedale from twenty-five to twenty-seven cents per thousand cubic feet without any order from the Public Utilities Commission authorizing such advance.

Section 30 of chapter 238 of the Laws of 1911 reads:

"Unless the commission shall otherwise order, it shall be unlawful for any common carrier or public utility governed by the provisions of this act within this state to demand, collect or receive a greater compensation for any service than the charge fixed on the lowest schedule of rates for the same services on the 1st day of January, 1911."

In defense the appellant alleged that under ordinances duly passed by the mayor and council of the respective cities in 1904 and 1905, it was authorized to advance the rate as alleged; that the appellant accepted

such ordinances, which thereby became contracts inviolate; that the appellant charged the rate of twenty-five cents per thousand cubic feet for gas in the respective cities from the time of the enactment of such ordinances until November 19, 1911, from and after which date it advanced the rate to twenty-seven cents, as by the terms of the respective ordinances it was entitled to do. Trial was had in the district court, an injunction was allowed and the defendant appeals.

Two principal questions are involved in the decision of the case; first, has the Public Utilities Commission any jurisdiction to regulate and control the rates for gas in the respective cities. This question involves the meaning of the words "public utility" as used in the public utilities act, especially as used in section 3, and more particularly in the closing sentence of that section. Section 3 reads:

"The term 'public utility,' as used in this act, shall be construed to mean every corporation, company, individual, association of persons, their trustees, lessees or receivers, that now or hereafter may own, control, operate or manage, except for private use, any equipment, plant, generating machinery, or any part thereof, for the transmission of telephone messages or for the transmission of telegraph messages in or through any part of the state, or the conveyance of oil and gas through pipe lines in or through any part of the state, except pipe lines less than 15 miles in length and not operated in connection with or for the general commercial supply of gas or oil, or for the operation of any trolley lines, street, electrical or motor railway doing business in any county in the state; also all dining car companies doing business within the state, and all companies for the production, transmission, delivery or furnishing of heat, light, water or power; provided, that this act shall not refer to or include mutual telephone companies. That mutual telephone companies, for the purpose of this act, shall be understood to mean any coöperative telephone company operating only for the mutual benefit of its subscribers without profit other than in the service received. Nothing in this act shall apply to any public utility in this state owned and

operated by any municipality. The power and authority to control and regulate all public utilities and common carriers situated and operated wholly or principally within any city or principally operated for the benefit of such city or its people, shall be vested exclusively in such city, subject only to the right to apply for relief to said Public Utilities Commission as hereinafter provided in section 33 of this act." (Laws 1911, ch. 238, § 3.)

It is contended by the state that the term "public utility" wherever used in the act means just what the legislature in section 3 has defined it to mean, viz.: "every corporation, company, individual, association of persons, their trustees, lessees or receivers," etc.

On the other hand, the gas company contends that the term is used in the last two sentences in section 3 in a different meaning, viz.: the pipes and other physical properties by means of which the public is served, and that as these physical properties are separately and independently situated and operated in the two cities, that there is a separate and distinct public utility in each city, which each city respectively has authority to control and regulate, and over which the Public Utilities Commission has no jurisdiction. It is urged that the meaning of "public utility," defined in section 3, could not be applied to the next to the last sentence in the section, which provides, in substance, that the act shall not apply to any public utility owned and operated by any municipality. It is said that a municipality could not own and operate a "corporation, company, individual, association of persons," etc. Again, it is said that the qualifying words, "situated and operated wholly or principally within any city," etc., by common usage relate to physical objects and not to corporations, companies, etc.

As applied in these two sentences the defined meaning of the term can not be said to have been fortunate, or rather the two sentences can not be said to have been fortunately constructed with reference to such mean-

ing. A reading of the entire act, in which the term "public utility" is frequently used, shows the intent of the legislature to use the term with the meaning defined even in the two sentences referred to. For instance, in the first sentence of section 33 it is provided, in substance, that every municipal council or commission shall have the power and authority to contract with any public utility, situated and operated wholly or principally within any city, etc. The qualifying words are the same as used in the last sentence of section 3, yet it would be absurd to suppose that authority was intended to be granted to a municipal council or commission to contract with pipes or other physical properties employed in operating the business.

The gas company further contends that the jurisdiction of the Public Utilities Commission is confined to inter-county or state-wide utilities; that the public utilities act is intended as a home-rule provision; that it was intended, as shown by section 33, to give municipal councils or commissions power to contract with any public utility to the exclusion of the power of the Public Utilities Commission therein. This last contention is true, in a measure, but, as we have seen, it is limited to a public utility "situated and operated wholly or principally within any city [which means *one* city] or principally operated for the benefit of such city or its people," and the appellant does not come within that description. Moreover, the appellant is not claiming under any contract made under the statute of 1911, but under an alleged contract made under chapter 122 of the Laws of 1903 (Gen. Stat. 1909, § 864 *et seq.*). This statute contained no provision authorizing cities to contract with a public utility, but did authorize (§ 51) the governing power of cities of the first class, in which is Kansas City, to "prescribe and fix maximum rates and charges, and regulate the collection of the same, for all water, electric light, heat, power, gas," etc.

Chapter 136 of the Laws of 1903 (see Gen. Stat.

1909, § 749 *et seq.*), relates to cities of the second and third classes. Rosedale was in 1903, and still is, a city of the second class. Section 2 of this act authorized Rosedale "to *contract* for and fix rates for private consumers, for a period of not exceeding twenty years" for "furnishing water, heat, light or power for public or private use." As authorized by this statute the mayor and council of Rosedale did by agreement with the appellant, it is said, pass ordinance No. 295, substantially like ordinance No. 6051, passed by the mayor and council of Kansas City, but with the further provision that no higher rate should at any time be charged in Rosedale than in Kansas City, Kan. This provision is a limitation upon the specified prices named in the ordinance. It follows, therefore, that if the appellant could not legally advance the rate in Kansas City from twenty-five to twenty-seven cents, it could not advance the rate in Rosedale. We may then disregard the greater power to contract given by the legislature to Rosedale and determine the case solely upon the grant of power to Kansas City, Kan.

Where the provisions of an act are plain and unambiguous we can only determine the meaning of it by its terms. Otherwise, we might compare it with contemporaneous legislation. The appellant correctly says that it was not conveying gas through a pipe line, but it was engaged in the business of furnishing and delivering gas to Kansas City and Rosedale and the inhabitants thereof. Heat and light, technically speaking, are not physical objects susceptible of transmission, delivery or furnishing, but are generated from combustible material or electricity. Indeed, the gas company furnishing Topeka operates under the name of Consumers Heat, Light & Power Company.

As said by the appellant, the utilities act was evidently framed upon similar acts in New York and Wisconsin. In section 1 of chapter 499 of the Laws of 1907 of Wisconsin the term "public utility" is defined

to mean "every corporation . . . that now or hereafter may own, operate, manage or control any plant or equipment . . . for the production, transmission, delivery or furnishing of heat, light, water or power, either directly or indirectly to or for the public." The language in this respect is the same as in the Kansas act and each fairly includes the transmission, delivery or furnishing of gas for light and heat.

We conclude that the meaning of the term "public utility," wherever used in the act, is just what the legislature defined it to be, and that the seeming incongruities in the sentences referred to result from the too abbreviated expression of terms used therein. Also that it is the intent of the act to give the power and authority to control and regulate a public utility to a city only as to such public utilities as operate and do business within, or principally within, the city to which the control is given and not elsewhere. That where, as in this case, the corporation constituting the public utility operates and conducts its business separately in Kansas City and Rosedale, the full power to control the same is vested in the Public Utilities Commission of the state, as provided in section 1 of the public utilities act, which reads:

"The Board of Railroad Commissioners of the state of Kansas is hereby constituted and created a Public Utilities Commission for the state of Kansas, and such commission is given full power, authority and jurisdiction to supervise and control the public utilities and all common carriers, as hereinafter defined, doing business in the state of Kansas, and is empowered to do all things necessary and convenient for the exercise of such power, authority and jurisdiction." (Laws 1911, ch. 238, § 1.)

The remaining question is whether ordinance No. 6051 of Kansas City became, upon the acceptance thereof by the appellant, a contract binding upon the city, as it purports to be, for a period of twenty years after the passage and publication thereof.

In the case of *In re Pryor, Petitioner*, 55 Kan. 724, 41 Pac. 958, it was said:

"In certain cases the state may fix and regulate the prices of commodities and the compensation for services, but this is a sovereign power, which may not be delegated to cities or subordinate subdivisions of the state, except in express terms or by necessary implication." (p. 728.)

In *The City of Leavenworth v. Rankin*, 2 Kan. 357, it was said:

"Municipal corporations are creations of law and can exercise only powers conferred by law and take none by implication. In making contracts they must act within the limits and observe the regulations prescribed, else there will be no contract. No subsequent act of the corporation can cure the defect where they do not. . . . Persons contracting with such corporations must inquire into their powers at their peril." (Syl.)

(See, also, *Leavenworth v. Laing et al.*, 6 Kan. 274, 287.)

Section 51 of chapter 122 of the Laws of 1903 (Gen. Stat. 1909, § 913), upon which reliance is placed as granting authority to the city to contract with the gas company, does not authorize the city to contract but does authorize the city "to prescribe and fix maximum rates and charges, and regulate the collection of the same. . . . The rates and charges so prescribed shall at all times be reasonable and just; and if any city shall fix unreasonable and unjust rates and charges, the same may, at the instance of any producer or consumer, be reviewed and determined by the district court of the county in which such city is situated."

In section 170 of the same act (Gen. Stat. 1909, §1034), is the following:

"The mayor and council of any such city shall *at all times during the existence of any such grant, contract or privilege* have the right by ordinance to fix a reasonable schedule of maximum rates to be charged for pub-

lic and private purposes, including street-lighting, . . . for gas . . . or heat."

If section 51 should be construed as granting to the city the power to fix, once for all, the rates during the existence of the grant, this provision—that the city should at all times have such power—would be meaningless. It can be fairly construed only to mean that the city may at different times change the rate to meet changing conditions.

Section 170*a* (Gen. Stat. 1909, § 1035) of the act provides for granting a franchise to construct, maintain and operate a natural gas plant for the purpose of furnishing a city and its inhabitants natural gas for light, fuel and all other purposes, with authority to lay or maintain all necessary mains and pipes in the streets, avenues, alleys and public grounds of the city, on such terms and conditions as may be agreed to by the mayor and council and such person, company or corporation.

In accordance with the rules of construction laid down in *Freeport Water Company v. Freeport City,* 180 U. S. 587, and other authorities cited, infra, the clause "that such franchise shall not continue for a longer period than twenty years" (§ 170*a*) qualifies the clause "to lay and maintain all necessary mains," etc., and not the clause, "on such terms and conditions as may be agreed to by said mayor and council and such person, company, or corporation." If it were intended to convey the right to fix by agreement or contract with the public utility the rates to be charged for the service, such intent can not be found in the language employed. If the provisions of section 170*a* are ambiguous and it is a matter of doubt whether the construction above given of the terms thereof is correct, or whether, as contended by the gas company, the city was thereby authorized to contract and fix the rates for service on such terms and conditions as may be agreed to, the doubt must be resolved in favor of the public and not

in favor of the appellant. (*Freeport Water Company v. Freeport City,* supra.)

In *Rogers Park Water Company v. Fergus,* 180 U. S. 624, it was said:

"A governmental function in a statute granting powers to a municipal corporation can not be held to have been granted away by statutory provisions which are doubtful or ambiguous." (Syl.)

(See, also, *Owensboro v. Owensboro Waterworks Co.,* 191 U. S. 358; *Stanislaus County v. San Joaquin C. & I. Co.,* 192 U. S. 201; *Water, Light & Gas Co. v. Hutchinson,* 207 U. S. 385.)

We conclude that by the provisions of chapter 122 of the Laws of 1903 the mayor and council of Kansas City were not authorized to contract with the appellant the rates for supplying gas to the city or its inhabitants for a period of twenty years, or for any term; that without such authority no such contract is valid; that though chapter 136 of the Laws of 1903 did authorize the mayor and council of Rosedale to make such contract and they did make such contract, the contract was limited by the provision in the ordinance that no higher rate should be charged in Rosedale than in Kansas City; that the appellant had no right to raise the rate from twenty-five to twenty-seven cents on November 19, 1911, without the consent of the Public Utilities Commission.

The judgment in this case purports to be a perpetual injunction prohibiting the appellant from raising the rate in either city from the rate collected January 1, 1911. It is conceded by the appellee that the rate may be raised if consent or permission therefor be given by the Public Utilities Commission of the state of Kansas. As we have seen, no valid contract exists between the appellant and Kansas City, and hence the rate for gas therein may be increased by the appellant to whatever sum per thousand cubic feet shall receive the con-

sent and approval of the Public Utilities Commission. In Rosedale, however, a contract authorized by law exists, and such contract, with the limitations therein provided, must govern any advance in that city.

It is therefore ordered that the judgment be modified as indicated herein and as so modified it is affirmed.