No. 19,186.

THE STATE OF KANSAS, ex rel. JOHN S. DAWSON, as Attorney-general, etc., *Plaintiff*, v. THE LEAVENWORTH CITY & FORT LEAVENWORTH WATER COMPANY, *Defendant*.

SYLLABUS BY THE COURT.

WATER COMPANY—*Supplying Water to City and Public and Private Institutions Outside the City is Subject to Control of Utilities Commission.* Upon the facts stated in the opinion it is held that a waterworks company engaged in supplying water to the city of Leavenworth and its inhabitants, and also to the United States military prison, the federal prison, Fort Leavenworth, the National Soldiers' Home and other public and private institutions outside the city (four-ninths of the total amount of water furnished being to outside consumers) is within the provisions of section 3 of chapter 238 of the Laws of 1911, and therefore subject to the control of the public utilities commission.

Original proceeding in mandamus. Opinion filed April 11, 1914. Writ denied.

*John S. Dawson,* attorney-general, *C. P. Rutherford,* of Leavenworth, and *F. B. Dawes,* of Clay Center, for the plaintiff.

*A. E. Dempsey,* of Leavenworth, *Samuel W. Moore,* and *Samuel W. Sawyer,* both of Kansas City, Mo., for the defendant.

The opinion of the court was delivered by

PORTER, J.: In 1882 the city of Leavenworth, a city of the first class, granted a franchise to the defendant to use the streets, alleys and grounds of the city for the purpose of placing water pipes therein and to furnish the city and its inhabitants with water. The franchise was to continue for a period of twenty years, the city reserving the right after the expiration of that time to purchase the waterworks, with all extensions, rights and franchises belonging thereto. The franchise

was accepted and the defendant erected its waterworks plant, and from that time to the present has been furnishing water to the city and its inhabitants.

Subsequent to the passage of the franchise ordinance and its acceptance by the water company the legislature, in 1883 (Laws 1883, ch. 34, § 2), passed an act declaring that such contracts and franchises shall not extend for a longer period than twenty years, unless extended as provided in the act; and further provided therein that after the expiration of such period, in case the city failed to purchase such waterworks, then the owners thereof should thereafter have possession and enjoy all the rights, privileges and franchises theretofore granted to or acquired by them, and power to maintain and operate the waterworks, with all the rights, franchises and privileges theretofore held and granted, until the city should purchase the same. The act by express terms was made to apply to franchises before that time granted by cities to waterworks companies.

The twenty-year period for which the original franchise was granted has long since expired. The city has failed to exercise its privilege of purchasing the waterworks, and in November, 1913, the city passed an ordinance regulating the rates to be charged by the defendant to the city and its inhabitants for water furnished, and providing certain conditions upon which the defendant should make extensions of its pipes and mains to accommodate the city and its inhabitants, and also providing other regulations with respect to furnishing meters to private consumers. The old rate for water furnished the inhabitants was fifty cents per 1000 gallons. The new ordinance fixed the rate to be charged at thirty cents. The defendant refused to obey the ordinance, and continued to keep in force the old rates, and this action was brought for a mandatory order requiring the company to comply with the ordi-

nance and to observe and put in force the rates fixed thereby.

The water company filed its answer and return to the alternative writ, claiming first, that the mayor and commissioners of the city of Leavenworth have no jurisdiction of the matter and have no right to fix rates for water furnished the people, nor in any way to regulate the conduct of the defendant; that the jurisdiction of such matters is in the public utilities commission of the state. In the answer and return it is further claimed that if the mayor and commissioners of the city have power to regulate the defendant, the ordinance of 1913 is unconstitutional and void, for the reason that in the original ordinance of 1882 a contract in regard to such matters was made and the rates which the defendant should charge for water were fixed, as well as the conditions under which the company should be required to extend its mains, and hence, that the new ordinance is in effect a law of the state that impairs the obligations of the contract embodied in the original ordinance, and is therefore unconstitutional and void. The case is submitted upon demurrers to the answer and return.

At the outset it is necessary to determine the jurisdictional question, and as we have arrived at the conclusion that the defendant is correct in the contention that the public utilities commission and not the city has exclusive jurisdiction of the subject matter of the controversy, the other questions raised by the demurrers and which are discussed in the briefs need not be considered.

The public utilities act is chapter 238 of the Laws of 1911. By section 1 the commission is given "full power, authority and jurisdiction to supervise and control the public utilities . . . doing business in the state of Kansas, and is empowered to do all things necessary and convenient for the exercise of such power, authority and jurisdiction." The only excep-

tion to this unlimited control is contained in section 3, where the power of regulation of "all public utilities and common carriers situated and operated wholly or principally within any city, or principally operated for the benefit of such city or its people," is vested exclusively in the city.

It is alleged in the petition and in the alternative writ that the defendant is furnishing water to said city and the inhabitants thereof, to divers and sundry people, and to private and public institutions in and outside of said city, including parks, public schools, the United States military prison, the federal prison, Fort Leavenworth, Soldiers' Home, and hospitals, and to charitable institutions. The answer admits these allegations, and further alleges that the defendant, in addition thereto, furnishes water to other persons outside of the city; that of the whole amount of water furnished consumers, four-ninths thereof is furnished to consumers outside of the city; that all of defendant's settling basins, intake pipes, and power plant are located outside of the city of Leavenworth; that the only facility located within the city of Leavenworth (except its pipe lines, hydrants, and facilities used in connection therewith) is a distributing reservoir; and that of the entire value of the defendant's plant ($720,000) not less than $490,000 is devoted to the service of the city of Leavenworth and private consumers therein.

It is quite obvious from the admitted facts that under the terms of the statute defendant's plant can not be deemed a utility "situated and operated wholly or principally" within the city, nor can it be said to be "principally operated for the benefit of such city or its people." The evident purpose in adopting the law was to provide for uniformity throughout the state in the control and regulation of public utilities, and in the rates to be charged by them, and to create a special tribunal for that purpose.

Public utility statutes are of comparatively recent origin, but are generally regarded by the courts as entitled to a liberal construction in order to advance the benefits sought to be gained, and to avoid the evils sought to be averted by the legislature. (*City of Troy v. United Traction Co.*, 202 N. Y. 333, 95 N. E. 759.) We do not believe that by the use of the word "principally" the legislature intended to mean a mere majority of the people served by a utility, nor that it was intended that the value and extent of the physical plant and machinery employed in furnishing public service should be appraised in order to determine whether the utility is principally operated for the benefit of a city, and the people thereof.

Nor can we conceive that the situation is altered in any respect by the fact that the United States government is one of the largest consumers of water among those supplied by the defendant outside the limits of the city. Doubtless the federal government could avail itself of any rates for service established by the state, but that question is not before us. The facts here present a stronger case for control by the public utilities commission than those in *The State, ex rel., v. Gas Co.*, 88 Kan. 165, 127 Pac. 639, or *City of Emporia v. Telephone Co.*, 90 Kan. 118, 133 Pac. 858. In both of the cases cited it was held that the utility fell within the jurisdiction and control of the public utilities commission.

The other questions of law raised by the answer and return are not deemed to be difficult of solution; and as a matter of fact, the parties are not very far apart in their contentions as to the law. The defendant concedes the power of the state, through some agency, to regulate the rates to private consumers, but contends that the state has no power to change the contract rate in the ordinance for water furnished to the city, nor to impose upon the defendant additional burdens respecting the extension of mains and the furnishing of

meters to private customers. It would be useless for us to pass upon questions of law which will depend largely upon the facts to be determined by the utilities commission after a full hearing.

It follows that the demurrers must be overruled and the action dismissed for the reason that the jurisdiction and control of the controversy is in the public utilities commission.