No. 22,274.

## THE CITY OF PARSONS, *Appellee*, v. THE PARSONS WATER SUPPLY AND POWER COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. PUBLIC UTILITY—*Appointment of Receiver—An Ancillary Remedy.* With few exceptions, the appointment of a receiver is an ancillary remedy which can only be obtained in an action in which other substantial equitable relief is sought, and such appointment is not made when that is the ultimate object of the action.

2. SAME—*Petition—Not an Action for Specific Performance.* Plaintiff's petition herein examined, and it is held that it cannot be regarded as a demand for specific performance of a contract, or for any relief other than the appointment of a receiver.

3. SAME—*Jurisdiction of Public Utilities Commission.* A city which complains that a public utility has failed to furnish efficient and sufficient service, and has failed to make improvements and provide the facilities necessary to the performance of the duties and contract obligations of the utility to the city and its inhabitants, should invoke the relief provided by the public-utilities act before resorting to the courts for relief.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed February 8, 1919. Reversed.

*Paul H. Kimball,* and *Webster W. Kimball,* both of Parsons, for the appellant.

*Thomas M. Brady,* and *W. A. Disch,* both of Parsons, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This proceeding brings up for review a judgment of the district court of Labette county, appointing a receiver for The Parsons Water Supply and Power Company, to take charge of the waterworks system, keep it as a going concern, make certain repairs and additions so as to furnish to the plaintiff, the city of Parsons, a sufficient supply of wholesome water. In its appeal, the defendant insists that the court was without authority to appoint a receiver, and, further, that the city had an adequate remedy at law for the defaults of which it complains.

The company is operating under ordinances of the city, and it is alleged in the petition that during the years 1917 and 1918 it had failed to comply with the terms and conditions of its contract with the city as to quantity and quality of water furnished; had failed to build, equip and maintain mains, pipes and conduits of a size and capacity to supply sufficient water; had allowed its pipe lines and conduits to deteriorate so that they would not stand the pressure necessary to carry the water for the needs and demands of the city and its inhabitants; that the reservoir and sources of supply were both unfit and inadequate, although abundant water for the supply of the city was available; and that the city through its officers had often requested the defendant to make improvements and provide facilities for an adequate supply of water, and thus comply with its contract with the city, but that the requests had been refused. It was alleged that plaintiff did not have an adequate remedy at law, and, hence, the present action was begun. The prayer of the petition was:

"That a receiver be appointed to take charge of the property of said defendant, and operate the waterworks under the direction and order of this court, and that under order of the court the receiver repair, improve and build said waterworks until the plant complies in efficiency and otherwise with all the requirements and provisions of said ordinance, and for such further and other orders as may to the court seem just and proper."

Evidence was taken on the application, and upon which the court made findings of fact and conclusions of law which are challenged; but because of the advancement of the cause for speedy hearing, the evidence has not yet been presented upon this appeal. In its findings, the court stated the requirements of the ordinances as to mains, conduits, aqueducts and standpipes, and among them was a stipulation that there should be an adequate supply of clear wholesome water fit for domestic use, with a pressure sufficient to throw six one-inch streams through four hundred feet of hose, within the fire limits, eighty-five feet high, and from any six hydrants outside the fire limits, sixty-five feet high. It was found that the company built a suitable standpipe, but the pressure was so low that water would not reach the second stories of the buildings, and that the pipe line leading from the river has been entirely inadequate to conduct water in sufficient quantities to meet the demands of the city, and its inhabitants, and that the filtering appliances are also wholly insufficient. Detail findings were made as to engines, pumps and machinery of the system, and also as to tests made at various times within the past two years showing lack of sufficient supply and the damages resulting from such lack. The court made an examination of the financial strength of the company, and found that it was able to raise the funds necessary to make the improvements and repairs, to put the plant in a condition to comply with the requirements of the contract, but also found that there was dissatisfaction among the stockholders of the company, and a lack of harmony among the directors by reason of which the money had not been provided. It was also found that a great many examinations of the quality of the water were made within the last five years, and the results for a period were that ninety-eight samples taken were fit for use and fifty-seven were unfit. At another period, in 1918, twenty tests were made and in only one of them was the water found to be fit for use. There was a finding that the state board of health had on examination found that the water at the source of supply was unfit for domestic use unless adequately purified, and that the company's plant was wholly inadequate to purify a quantity of water sufficient for the requirements of the city, and the board pointed out in detail the improvements and additional facilities necessary to insure a sufficient supply

of wholesome water, but they were not made or furnished. The company is under contract to furnish a large quantity of water to the M. K. & T. Ry. Co., and the state board of health notified the railway company that the water obtained from the defendant was unfit for drinking and ordered that it be not used on its cars or other vehicles for either drinking or culinary purposes. The court finally found that the company had flagrantly violated the terms and conditions of its franchise, thereby endangering the health and property of the citizens of the city of Parsons, and that its delinquency was due in a large measure to the lack of adequate facilities for furnishing a supply, and in part to a lack of unanimity among the officers, directors and stockholders of the company.

From the findings it was concluded and ordered that a receiver be appointed to take possession of the plant and operate it as a going concern, and that he proceed at once to make a survey and determine what repairs and additions were necessary to the furnishing of a supply of wholesome water to the city. The order provided that between the time of the order, December 18, and the 26th day of the same month, the company be given an option to provide a bond of $75,000 conditioned on proceeding at once to enlarge the flow line, make improvements, and do the things necessary to secure an ample supply of water, and that the work be completed on or before July 1, 1919.

Taking the petition and findings alone, they show beyond question that defendant has violated its oligations under the franchise in a way that seriously affects the city and its inhabitants, and that plaintiff is entitled to a speedy remedy. Defendant insists that the plaintiff is not entitled to the remedy which it seeks, for several reasons. The first contention is that the only purpose of the plaintiff's action is the appointment of a receiver, and as that is purely an ancillary remedy, provisional in character, it can only be obtained in an action in which other substantial equitable relief is sought. The general rule is that a receiver will not be appointed when that is the substantive ground and ultimate object of an action. (*The State, ex rel., v. Ross,* 122 Mo. 435; *Whitney v. Bank,* 71 Miss. 1009; *Supreme Sitting of the Order of Iron Hall v. Baker et al.,* 134 Ind. 293; *Jones v. Bank of Leadville,* 10 Col. 464; *French Bank Case,* 53 Cal. 495; *Vila v. Grand*

*Island Electric Light, Ice and Cold Storage Co.,* 68 Neb. 222; Beach on Receivers, § 51.)

With a few exceptions, such an appointment can only be made in aid of some substantial relief which may be granted by a court of equity. In *Vila v. Grand Island Electric Light, Ice and Cold Storage Company,* supra, the rule was stated as follows:

"The law of receiverships is peculiar in its nature in that it belongs to that class of remedies which are wholly ancillary or provisional, and the appointment of a receiver does not affect, either directly or indirectly, the nature of any primary right, but is simply a means by which primary rights may be more efficiently preserved, protected and enforced in judicial proceedings. It adjudicates and determines the right of no party to the proceedings, and grants no final relief, directly or indirectly. Smith, Receiverships, § 2; Beach, Receivers, § 51; Pomeroy, Equity Jurisprudence, §§ 171, 1319, 1330; *Miller v. Bowles,* 58 N. Y. 253; *Wallace v. Pierce-Wallace Publishing Co.,* 101 Iowa, 313; . . . *The People v. Weigley,* 155 Ill. 491." (p. 240.)

Is the sole relief sought by plaintiff herein the appointment of a receiver? The petition recites the conditions of the franchise contract, the nonperformance of them by the defendant, and its refusal to make the repairs and additions to the water plant necessary to meet the obligations of the contract. The only specific relief demanded in the prayer of the petition is that a receiver be appointed, who shall, under the direction of the court, make such repairs and improvements on the water plant as will comply with the contract. In a preliminary application in this court for a stay of the judgment, some reliance was placed on the provision of the franchise that in case the company should fail to efficiently operate the plant or to furnish the specified quantity and quality of water, the city might procure the appointment of a receiver to take charge of and operate the waterworks plant under the direction of the district court, but this position has been abandoned by the plaintiff, and in its brief it expressly says that it does not now contend that this provision of the contract confers jurisdiction upon the court to appoint a receiver. Its contention is that the court has jurisdiction to compel performance of the contract, that the ultimate relief sought is specific performance, and that as an incident of that right and to enforce performance, the court had the authority to appoint a receiver. It is the opinion of the court that the averments of the petition

will not bear the interpretation which plaintiff now places upon it. The prayer of the petition indicates the purpose of the pleader, and the scope and tenor of the prayer is inconsistent with the idea that other relief than the appointment of a receiver was desired. The inclusion in the prayer of a demand "for such further and other orders as may to the court seem just and proper," does not help the plaintiff. The code provides that the petition must contain a demand for the relief to which the party supposes himself to be entitled. (Civ. Code, § 92.) One purpose of a prayer is that a party may understand what relief will be given against him if default be made, and the defendant may ordinarily assume that a plaintiff will not be given greater relief than that specifically demanded. It is the conclusion of the court, therefore, that the plaintiff did not have in mind and did not invoke the remedy of specific performance or any other relief than the appointment of a receiver, and, that being the sole remedy sought, the court was without jurisdiction to appoint a receiver.

But if it were held that the relief sought by plaintiff was specific performance, and for the appointment of a receiver as incidental to that primary purpose, the relief asked by the plaintiff must nevertheless be denied. The complaint of the plaintiff should have been presented to the public utilities commission in the first instance. That board is specifically empowered to require a public utility to furnish to the public reasonably efficient and sufficient service and to provide necessary facilities for that purpose. (Gen. Stat. 1915, § 8337.) That act declares that a company which transmits, delivers or furnishes water is a public utility. (Gen. Stat. 1915, § 8329; *The State, ex rel., v. Water Co.*, 92 Kan. 227, 140 Pac. 103.)

The commission is enjoined to investigate complaints that service performed or to be performed by a public utility is unreasonably inadequate, inefficient, unduly insufficient or cannot be obtained, and may upon notice or upon its own motion, without notice, if the facts warrant, require such utility to make improvements and do such acts as are or may be required by law. (Gen. Stat. 1915, § 8341.) The commission has not only the authority to investigate complaints like the one made by the plaintiff, but it is provided with the facilities essential to prompt action and early decision. It is the appropriate tribunal for the settlement of the questions that divide the par-

ties herein, and under the authorities the questions involved must be submitted to the utilities commission before resort may be had to equitable or extraordinary remedies in the courts. (*The State, ex rel., v. Gas Co.,* 88 Kan. 165, 127 Pac. 639; *The State, ex rel., v. Water Co.,* 92 Kan. 227, 140 Pac. 103; *The State, ex rel., v. Postal Telegraph Co.,* 96 Kan. 298, 150 Pac. 544; *City of Scammon v. Gas Co.,* 98 Kan. 812, 160 Pac. 316.)

Whether plaintiff should first invoke the action of the municipal commission or of the public utilities commission, depends upon whether or not the defendant is a one-city utility. The statute provides that if it is situated and operating wholly or principally within a city, or principally operating for the benefit of a city or its people, the authority is vested in the municipal commission, otherwise it is in the public utilities commission. (Gen. Stat. 1915, § 8329.) Under this provision, if the jurisdiction is in the municipal commission, a review of its decision may be had by the public utilities commission, in the way provided by section 33 of the utilities act. (Gen. Stat. 1915, § 8361.) We cannot determine upon the record brought before us whether or not the utility is principally operated within or for the benefit of the city and its people, and probably the question received no particular attention in the trial court. Only the pleadings and findings are before this court, and, as stated, these do not show how much of the waterworks plant is within the city, nor the extent or importance of its operations beyond the corporate limits. It has been said:

"Where it is strongly debatable whether the utility's business is or is not confined principally to one town or city, this court is inclined to resolve the doubt in favor of the commission's authority." (*Street Lighting Co. v. Utilities Commission,* 101 Kan. 774, 777, 169 Pac. 205; *State, ex rel., v. Water Co.,* supra.)

In any event, there need not be much delay in the final determination of the case, for if action must be first taken by the municipal commission, its decision may be reviewed in a few days afterwards by the public utilities commission.

The judgment is reversed, and the cause is remanded with instructions to discharge the receiver.

JOHNSTON, C. J. (dissenting in part): In my view the petition is open to the interpretation that the primary relief

sought by the plaintiff was the specific enforcement of the obligation of the defendant under the franchise contract, and while the prayer for that relief was not as specific as it should have been, it was covered by the prayer for general relief. The appointment of a receiver was unduly emphasized, but the plaintiff evidently proceeded on the theory that specific enforcement could be most effectively accomplished through the aid of a receiver. I concur in the judgment of a reversal, upon the ground that the plaintiff should first seek relief for the shortcomings of the defendant in the manner prescribed in the public utilities act.