No. 31,084.

THE HOLTON CREAMERY COMPANY, *Appellant,* v. G. H. BROWN, as Mayor, etc., et al., *Appellees.*

(20 P. 2d 503.)

Opinion filed April 8, 1933.

*M. A. Bender* and *Minnie M. Banks,* both of Holton, for the appellant.
*Albert M. Cole,* city attorney, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from a judgment on demurrer to plaintiff's petition in which it complained that defendants, as officers of the city of Holton, were exacting excessive rates for utility services supplied to plaintiff as a customer of the municipal light and power plant and the city's water supply.

Plaintiff's petition alleged that it was engaged in the corporate business of manufacturing butter and dairy products in Holton, in the prosecution of which business it is a large user of water and electric current, both of which services are supplied by the city at a rate fixed by city ordinance, and that the—

"Rate for said electric current and water . . . being charged . . . is high, oppressive and confiscatory, . . .; that . . . the plaintiff is unable to pay said rate and compete with other concerns engaged in the same

business, but notwithstanding the same the said defendant threatens to, and will, unless restrained and enjoined by an order of this court, and without notice, cut off the creamery of plaintiff from said electric current and water, which will be to its great and irreparable damage,. and. that it has no adequate remedy at law."

Plaintiff also alleged that these excessive rates were far in excess of the legitimate requirements of the water and light plant of the city, and that temporary and permanent injunctive relief should be granted.

Defendants' demurrer to this petition was sustained and the matter is brought here for review.

Turning first to the brief of counsel for defendants for an explanation of the trial court's ruling on the demurrer, we read:

"Appellees, for the purpose of this demurrer, admit that the rates charged by the city are high, oppressive and confiscatory, and that it is making a profit from said rates and creating a surplus thereby. However, appellees ·contend that the court has no jurisdiction to interfere with the city in the matter of establishing rates for light and water."

A related contention of the appellees is:

"Section 66-104 of Revised Statutes of Kansas for 1923 vests in the city the exclusive control and regulation to public utilities operating in the city, subject only to the right to apply for relief to the public utilities commission."

Under the statute which authorizes municipal ownership of public utilities (R. S. 12-801 et seq.) the city is authorized to supply those services to its inhabitants, and R. S. 12-813 provides:

"The governing body shall by ordinance fix all rates for water and sell and dispose of water to any person or corporation within or without said city."

Notwithstanding this grant of power, however, the city cannot exact any rates it sees fit to impose. Such rates must be reasonable; and persons and corporations dependent on these utilities are entitled to judicial protection against excessive or confiscatory rates. In *Holly v. City of Neodesha*, 88 Kan. 102, 127 Pac. 616, a customer of the municipal water plant had a dispute with the city over his water bill, and the water rates were brought into the controversy. This court said:

"Cities which undertake to furnish water to their inhabitants are subject to the same limitations in this respect as private companies operating under city franchises." (p. 109.)

In *Am. Aniline Prod. v. Lock Haven*, 288 Pa. St. 420, 50 A. L. R. 121, the familiar common-law rule was stated that courts have the

power to determine questions relating to rates of a municipality in furnishing a water supply, where complaint is based on the questioned reasonableness of the ordained rate, the justness of its application, or discrimination amounting to confiscation.

In 27 R. C. L. 1443 it is said:

"A municipality operating its own water system is subject to the same duties and obligations and responsibilities as an individual or private corporation running and operating a like business, and is subject to have the rates charged, regulated and fixed, in the same manner prescribed by law for the fixing of water rates generally.

"When a constitution or statute provides for the fixing of rates or compensation, it means reasonable rates and just compensation. So a board or other body to which rate-making power is delegated has no right to fix rates arbitrarily and without investigation or without exercising its judgment or discretion to determine what is a fair and reasonable compensation."

In the same volume it is said:

"The doctrine that the legislature is, for political reasons of manifest force, wholly exempt in all its proceedings from any legal process or judicial control, is not, nor is any portion of it, true, when applied to a subordinate municipal body which, though clothed to some extent with legislative and even political powers, is yet, in the exercise of all its powers just as subject to the authority and control of courts of justice, to legal process, legal restraint, and legal correction, as any other body or person, natural or artificial. And if water rates are fixed by subordinate bodies acting under legislative power or otherwise than by appropriate judicial proceedings, in which full notice and an opportunity to be heard are given, it is within the province of the courts to review such action to the extent, at least, of determining whether the rates so fixed will furnish some reward for the property used and the services rendered." (pp. 1447, 1448.)

In 43 C. J. 421 it is said:

"The power to fix rates for public utilities, whether owned by private interests or by municipal corporations, rests primarily with the state. The state in doing so may make different regulations for municipally owned utilities and privately owned utilities. While the state may limit the rates and charges so that they will be sufficient only to meet outlays and expenses of every kind by reason of their ownership and operation, the corporation may fix the rates so as to derive a fair and reasonable revenue therefrom. It may change the rates from time to time as the circumstances may demand it. The rates cannot be discriminatory. They must be reasonable; and they are subject to review by the courts in the same manner as the rates fixed for public utilities privately owned."

In 5 McQuillin's Municipal Corporations, 2d ed., 64, 65, it is said:

"Where a municipality owns its water or light works, it is settled that it has the right to charge rents against consumers who make use of its service. How-

ever, the rates must be reasonable, although the municipality may charge a rate which will yield a fair profit, and need not furnish the supply or service at cost; and the same rules in regard to the reasonableness of rates apply as in case of the rates of private companies owning a public utility. Otherwise stated, where the municipality owns its plant, the rates for water, light or any other product, furnished by it must be fair, reasonable and just, uniform and nondiscriminatory." (See, also, 3 Pond's Public Utilities, 4th ed., ch. 30.)

Considering next the contention of appellees that control of rates and services of the utilities owned and operated by the city of Holton is vested in the city government subject to review before the public utilities commission by virtue of the statute of 1911 and its amendments (R. S. 66-101 *et seq.*), that statute specifically provides:

"Nothing in this act shall apply to any public utility in this state owned and operated by any municipality. . . ." (R. S. 66-104.)

The plain language of the statute just quoted apparently has been so generally understood that this court hitherto has not been called on to consider it, although it was incidentally before us in *Humphrey v. City of Pratt,* 93 Kan. 413, 144 Pac. 197, where it was decided that it was not necessary for the city to obtain a certificate of convenience and necessity from the public utilities commission as prescribed by section 31 of the act (R. S. 66-131) before the city could set about the construction of a municipal light plant. In response to certain criticism of this state of law resulting from the enactment of the utilities act of 1911, the court said:

"Conceding this argument to be economically sound, it should be addressed to the legislature which indisputably disregarded it by the plain and unambiguous exclusion from the definition of 'public utilities' of public utilities owned and operated by municipalities. To strain the definition to include municipally owned utilities brought into being subsequent to the enactment of the statute would be to amend the law and not to interpret it." (p. 417.)

In *Springfield Gas Co. v. Springfield,* 292 Ill. 236, 18 A. L. R. 929, the city owned and operated an electric light plant and furnished electricity to private consumers in competition with a private corporation; and a question of the power of the state commission to regulate the rates and services of the municipal plant came before the supreme court. The pertinent Illinois statutes, which were not fundamentally different from ours, were considered, and it was held:

"Appellant's contention, therefore, that public utilities owned and operated by municipalities are subject to the same regulation and rates under the public utilities act as those owned and operated by private corporations, and that it

should be granted an injunction on the grounds contended for by it, cannot be sustained." (p. 254.) (See, also, the same case in 257 U. S. 66, 66 L. Ed. 131.)

In *Pabst Corporation v. Milwaukee*, 190 Wis. 349, 45 A. L. R. 1164, the court held that a water plant owned and operated by a municipal corporation was subject to regulation as to rates by the public service commission, but that conclusion was reached by interpretation of the pertinent Wisconsin statutes, which on this point are diametrically at variance with ours.

Under our statute the rates and services of a utility corporation (not municipally owned) which operates wholly or principally within one town or city are under the control of the city government in the first instance but subject to the right of anybody concerned to apply for relief to the public utilities commission. (R. S. 66-104; *Street Lighting Co. v. Utilities Commission*, 101 Kan. 438, id. 774, 166 Pac. 514, 169 Pac. 205; *City of Parsons v. Water Supply and Power Co.*, 104 Kan. 294, 300, 178 Pac. 438; *Utilities Co. v. Railway Co.*, 108 Kan. 285, 292, 195 Pac. 889; *City of Hutchinson v. Hutchinson Gas Co.*, 125 Kan. 346, 350, 264 Pac. 68; *Wichita Water Co. v. Public Service Commission*, 126 Kan. 381, 268 Pac. 89.) Where the utility company serves more than one town or city, the regulatory jurisdiction in the first instance is in the state commission (with its periodic and frequent changes of title). (*State, ex rel., v. Water Co.*, 92 Kan. 227, 140 Pac. 103; *City of Winfield v. Court of Industrial Relations*, 111 Kan. 580, 586, 587, 207 Pac. 813.) Here, however, as we have seen, the defendant city owns the light and water plant, and municipally owned utilities are expressly excluded from the governance of the utilities act. In the case of *State, ex rel., v. McCombs*, 129 Kan. 834, 839, 284 Pac. 618, where fault was found with the statutory scheme for regulating the municipally owned utilities of Kansas City, this court said:

"Municipal ownership of public utilities is new, the more modern utilities at least; consequently legislation for their management is bound to be empirical and subject to frequent change as experience dictates; and the transfer of the control of the water and light plants from the general control of the city government to a special board having no other municipal concerns to attend to is quite a proper exercise of experimental legislation. If it succeeds, good and well; if not, the legislature has plenary power to try something else or restore control to the governing body of the city."

In view of the foregoing the trial court's ruling on the demurrer cannot be sustained; and this necessitates that the cause be remanded to the district court with instructions to set aside its ruling on the demurrer and to proceed with the cause. It is so ordered.