No. 38,469

THE KANSAS POWER AND LIGHT COMPANY, a corporation, *Appellant*, v. THE CITY OF GREAT BEND, a municipal corporation; JOSEPH A. MERMIS, JR., Mayor; WAYNE E. PRITCHARD, Councilman; LEON MOORE, Councilman; J. J. AMES, Councilman; EARL MOSES, JR., Councilman; J. D. FERRELL, Councilman; FRED KINZEL, Councilman; HERBERT O. SCHREPEL, Councilman; and L. T. SHAFER, Councilman, and BARTON CAROTHERS, City Attorney, *Appellees.*

(238 P. 2d 544)

Opinion filed December 8, 1951.

*Balfour S. Jeffrey,* and *Robert E. Russell,* both of Topeka, argued the cause, and *Clayton E. Kline, M. F. Cosgrove,* and *C. A. McGaw,* of Topeka, and *R. C. Russell* and *Isabel Obee,* of Great Bend, were with him on the briefs for the appellant.

*Barton Carothers,* of Great Bend, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This action brought by appellant in the district court of Barton county was for an injunction against enforcement of Ordinance No. 1286 of the defendant city. The district court denied the injunction, and this appeal was taken from such order.

Plaintiff (appellant here) is a Kansas public utility corporation and defendants (appellees here) are the City of Great Bend and the officers of that city, and for the purpose of brevity the appellant will

hereinafter be referred to as "the utility" and the appellees as "the city."

The utility is engaged in distributing and supplying natural gas to a number of cities wholly within the state of Kansas including the City of Great Bend, pursuant to a certificate of convenience and authority granted by the Corporation Commission of the State of Kansas. The utility has installed its mains and services in the city pursuant to a franchise ordinance granted by the city many years ago, and until the expiration of that franchise in January, 1949, supplied natural gas to the city under that franchise. Since its expiration the utility has continued to furnish gas to the city without a new franchise.

Since January, 1949, the utility has presented a new franchise to the governing body of the city and requested its passage on the basis of the term being twenty years and, in lieu of all city occupation and license fees, that a consideration be paid to the city amounting to two percent on a gross revenue basis from the sale of domestic and commercial gas in the city, which would amount to approximately $5,000 annually. The governing body of the city has refused to pass the submitted franchise and has countered with submission of a ten-year franchise on substantially the same terms, which the utility in turn has refused to accept, the situation thereby becoming a stalemate.

Subsequent thereto and on December 9, 1950, the city published Ordinance No. 1286 entitled "An ordinance regulating the use of the city streets and alleys by businesses furnishing natural gas for light, heat and power purposes to the inhabitants of the city . . . for pay, by means of pipe lines laid in the public streets and alleys of the city . . . providing for a license, the collection of a license fee, and providing penalties for the violation thereof." Under terms of the ordinance, the city made it unlawful for the utility to carry on the business of furnishing natural gas for light, heat and power purposes to the citizens of the city for pay by means of pipe laid in the public streets and alleys unless a license fee of $10,000 per year was paid by the utility; as a condition precedent to carrying on such business the utility is required to pay $5,000 of the license fee on January 1, 1951, and it is further provided that if the utility should fail and refuse to pay the license fee and continue to distribute natural gas to the inhabitants of the city without paying the license fee, then it shall be deemed guilty of a misde-

meanor and fined not less than $2 per day nor more than $100 per day for each day that said business is conducted without the license fee having been paid, and that each day shall constitute a separate offense.

This brings us to this question presented by the parties: Has a city of the second class such as appellee the authority under G. S. 1949, 12-1650 as amended by Laws of 1951, chapter 139, to classify and license for the purpose of regulation or revenue a public utility business operated within the limits of such city and servicing other municipalities under a certificate of convenience and authority from the Corporation Commission and which business has been specifically and exclusively reserved to the state of Kansas as an object of regulation by the State Corporation Commission and as an object of taxation through the Commission of Revenue and Taxation?

As authority for publication of the mentioned ordinance, the city relies on G. S. 1949, 12-1650 as amended, which in pertinent part reads as follows:

"That the governing body of any city of the second or third class shall have the power by ordinance to classify and license for purpose of regulation or revenue any and all occupations, businesses or professions pursued, conducted or carried on within its corporate limits *which are not prohibited by law or which are not or shall not be specifically or exclusively reserved to the state or county as objects of taxation or regulation,* subject to the constitution and laws of this state, and shall fix the amount of all license fees and provide for their collection and prescribe penalties for the nonpayment thereof. . . ." (Italics supplied.)

The utility contends that it is completely outside the scope of the mentioned statute and immune from payment of license fees and other regulatory action by the city under Ordinance No. 1286 for the reason that it is specifically and exclusively reserved to the state as an object of taxation and regulation under the Public Utilities Act, G. S. 1949, chapter 66.

G. S. 1949, 66-101 provides that the State Corporation Commission is given full authority to supervise and control the public utilities doing business in Kansas and empowered to do all things necessary and convenient for the exercise of such power. G. S. 1949, 66-104 provides that the term "public utility" shall be construed to mean every corporation that now or hereafter may own, control, operate or manage any equipment, plant, or the conveyance of oil and gas through pipe lines in or through any part of the state.

G. S. 1949, 66-117 provides that when any public utility governed

by the provisions of the Act shall decide to make a change in any rate, joint rate or classification, schedule of changes, in any rule, regulation or practice pertaining to the service or rates for any such utility or common carrier, such utility shall file with the Corporation Commission a schedule showing the change desired to be made and put in force by such utility, and no change shall be made in any rate, schedule of changes, or any rule or regulation pertaining to rates without the consent of the Commission. G. S. 1949, 66-141 provides that all grants of power, authority and jurisdiction made to the Commission shall be liberally construed and all incidental powers necessary to carry into effect the provisions of the Act are exclusively granted to and conferred upon the Commission.

Utilities serving municipalities are not only subject to the above regulatory authority of the State Corporation Commission but their services, facilities, expenditures and contracts as well as the business policies established by their rules and regulations are subject to the authority of such Commission. In the case of gas utilities, the authority extends even to details respecting the installation of regulatory and pressure gauges and so forth. Detailed annual reports are required within the discretion of the Commission, which also has authority to and has prescribed uniform systems of accounts to be maintained by utility companies in the operation of their business, and many other regulations and restrictions as are set forth in chapter 66 of the laws of Kansas. In no other field of business is the authority to regulate so completely reserved to and exercised by the state as in the case of public utilities. When the legislature enacted G. S. 1949, 12-1650, with minor amendments made by chapter 139, laws 1951, it must have had in mind some type of business which would fall within the exceptions specified therein. Otherwise there would have been no possible reason for making the exceptions contained therein.

Public utilities such as appellant utility are subjected by state law to the utmost regulation and to assessment for taxation by the state itself through its own statewide agencies. It is certainly a reasonable presumption to believe that the legislature had public utilities specifically in mind as the first group to be freed of confusing and conflicting local regulation and assessment. Utilities thus represent the prime example of businesses over which the state has reserved to itself the exclusive jurisdiction of regulation and taxation. It is apparent that the business of appellant utility has

been exclusively reserved to the state of Kansas as an object of regulation through the state's instrumentality, the Corporation Commission, and that appellees are without authority under section 12-1650 as amended, due to the exceptions therein contained, to license the appellant utility and to levy a license fee by ordinance against its operation in the city. This court on numerous occasions has sustained the jurisdiction of the Corporation Commission to regulate the business of a public utility. In *The State, ex rel., v. Water Co.*, 92 Kan. 227, 140 Pac. 103, we held that under the Public Utilities Act (chapter 238, Laws 1911), the Commission is given full power, authority and jurisdiction to supervise and control public utilities doing business in Kansas and was empowered to do all things necessary and convenient for the exercise of such power. Again in *Street Lighting·Co. v. Utilities Commission*, 101 Kan. 774, 169 Pac. 205, we stated that this court will always extend a very liberal interpretation of the public utilities act so as to give the Public Utilities Commission effective use of its lawful powers over the utilities companies lawfully subject to its control.

Both the city and the State Corporation Commission are creatures of the legislature. Neither has any inherent power or authority except such as is expressly granted by the state. The legislature has the power to regulate the authority of either in any manner in which it deems proper, and it exercised that power in passing G. S. 1949, 12-1650 as amended, to prohibit a city from licensing and levying a license fee against a business which the state had made an object of regulation by the State Corporation Commission. The state creates governmental officers and agencies, clothes them with authority, alters that authority, resumes it and imposes it on other functionaries as experience may suggest. *City of Winfield v. Court of Industrial Relations*, 111 Kan. 580, 207 Pac. 813; *Eastern Shore P. S. Co. v. Town of Seaford*, 23 Del. Ch. 199, 2 Atl. 2d 265; *The State, ex rel., v. Gas Co.*, 88 Kan. 165, 127 Pac. 639; *City of Parsons v. Water Supply and Power Co.*, 104 Kan. 294, 178 Pac. 438.

In adopting the Public Utilities Act, G. S. 1949, chapter 66, the state reserved to itself the right to regulate every phase of the public utility business as hereinbefore related. In turn the utility companies are obligated to furnish an efficient service at a reasonable rate and may not change that rate without the consent of the Commission. Once a utility is vested with authority to enter upon the streets of a city and to exercise the privilege conferred upon it,

the Commission may regulate service, prescribe rates and order continuance of service at such prescribed rates. *City of Wilson v. Electric Light Co.*, 101 Kan. 425, 166 Pac. 512.

Sections 14-401 and 12-848, G. S. 1949, cited by the city, and relating to general powers of governing bodies of cities of the second class to have the care, management and control of a city, its streets, alleys, public grounds, and finances, are restricted and such granted authority may not be in conflict with the Constitution and state laws. In the instant case, such general law has been superseded by the Kansas Franchise Act.

The Kansas Franchise Act (G. S. 1949, 12-2001) provides the only method by which a city may grant to a public utility such as appellant herein the right to use the public streets in carrying on its private business. Pertinent parts of the Act follow:

"The governing body of any city may permit any person, firm or corporation to manufacture, sell and furnish artificial or natural gas . . . to the inhabitants . . . and may grant to any person, firm, corporation or partnership the right to use the streets in the carrying on of any business which is not prohibited by law wherein said business is primarily conducted on the streets of any city of the state of Kansas, upon the express condition hereinafter imposed, *and not otherwise,* in this act to wit:" (Italics supplied).

It further provides that all contracts granting or giving any such original franchise right or privilege or extending, renewing or amending any existing grant, right, privilege or franchise shall be made by ordinance and not otherwise; and in the fifth paragraph, that no such grant, right, privilege or franchise shall ever be made to any person, firm, corporation or association unless it provides for adequate compensation or consideration therefor to be paid to such city. The seventh paragraph of the Act follows:

"All contracts, grants, rights, privileges or franchises for the use of the streets and alleys of such city, not herein mentioned, shall be governed by all the provisions of this act, and all amendments, extensions or enlargements of any contract, right, privilege or franchise previously granted to any person, firm or corporation for the use of the streets and alleys of such city shall be subject to all the conditions herein provided for in this act for the making of original grants and franchises. . . ."

It is apparent from the mentioned franchise act that it is a restriction upon the corporate powers of a municipality to grant to utilities the right to use the streets and other public property without first obtaining a franchise as therein provided. It is a protection for the utility to enable it to recapture its capital investment

and grants a protection to the residents and local taxpayers that reasonable compensation will be paid by the utility to the municipality for such privilege. The Act is exclusive in its nature as to the manner and method by which a city may grant a right to a utility to use its streets and to receive compensation therefor. It is sufficient to say that strict compliance with the franchise law (G. S. 1949, 12-2001) is obligatory on both the utility and the city. While G. S. 1949, 12-1650 grants to the city the power to license businesses by ordinance for purposes of regulation and revenue, such act must give way to the voice of the legislature in a specific act granting a right to public utilities and prescribing the manner and mode in which that right or privilege to the use of the streets may be granted by a city.

From the foregoing it is apparent that G. S. 1949, 12-1650, upon which the city relies for authority to pass and enforce city ordinance No. 1286 in question does not grant to the city the alternative provision of using such statute for granting to a utility the right of using the streets nor the right of the city to collect revenue for such privilege, circumventing the mandate of the legislature as announced in G. S. 1949, 12-2001. It therefore follows that the city ordinance (No. 1286) is invalid and beyond the corporate power of the city to enforce in the instant case.

Other questions argued by the parties to this appeal are not within the issues raised by the pleadings and the record fails to disclose that they were presented to the trial court; therefore they will not be decided here.

The judgment of the lower court is reversed with direction to permanently enjoin the city from enforcing or attempting to enforce the provisions of Ordinance No. 1286 as against the appellant in this action.